## H. F. & E. D. CRADDOCK v. SARAH AND WILLIAM GOODWIN.

### (Case No. 439.)

1. JOINDER OF PARTIES.— Husband and wife may join as plaintffs in an action for damages for the wrongful seizure by attachment of property exempt by law from forced sale.
2. RULE OF CONSTRUCTION — PLEADING.— The same strictness of pleading in regard to joinder of parties and causes of action, does not prevail in Texas as is observed in states where the distinction between law and equity forms of action is recognized.
3. MULTIFARIOUSNESS.— See statement of case for a petition complaining of many matters, but held not liable to exception for multifariousness.
4. SET-OFF.— In a suit for the wrongful seizure under attachment of property exempt from forced sale, the defendant cannot plead in set-off the debt on which the attachment proceedings were based.

5. DAMAGES.— Expenses in attending court and loss of time by one whose property has been wrongfully seized under attachment, which were expended and incurred in defending the suit, cannot in an action for damages for wrongfully suing out the attachment, be considered as proof of actual injury.

6. FACT CASE — EXEMPLARY DAMAGES. — See statement and opinion for facts pleaded, connected with the seizure of property exempt from forced sale under attachment, which warranted a recovery of exemplary damages.

7. DAMAGES.— In an action for malicious trespass on personal property, while there is no certain fixed standard to govern the jury, they may properly consider not only what is due to the party complaining, but to the public, by inflicting the payment of speculative, exemplary or vindictive damages. But where no circumstances of malice, oppression or intentional wrong are shown, the usual measure of damages is the value of the property taken, and interest.

APPEAL from Walker. Tried below before the Hon. J. R. Burnett.

William Goodwin and Sarah Goodwin, his wife, appellees, brought suit jointly against H. F. & E. D. Craddock, on the following alleged causes of action:

1. The wrongful and malicious suing out of an attachment by the appellants against William Goodwin, in one of the justices' courts of Trinity county, on a note for $118.51, executed by William Goodwin in favor of H. F. & E. D. Craddock.

2. The wrongful and malicious suing out of an attachment in the district court of Trinity county, by the same parties, on the same note, against William Goodwin.

3. For damages for the wrongful seizure and detention under those attachments of a mare of the value of $100, claimed to be the property of William Goodwin.

4. For damages for the willful seizure and detention under the attachments of a colt of the value of $50, alleged to be the separate property of the appellee Sarah Goodwin.

The appellants pleaded in reconvention the note on which the attachments were sued out, to which appellees

excepted, and the exception was sustained, on the ground that a claim against William Goodwin could not be pleaded in reconvention against a joint demand of William and Sarah Goodwin. Judgment was rendered against the appellants in favor of the appellees jointly for $200.

Sarah Goodwin was not a party to the attachment suits of appellants against William Goodwin. Appellees did not sue for the possession of the mare and colt alleged to be exempt from attachment. Appellees declared on the attachment bond in the attachment sued out in the district court, but dismissed as to the sureties, they not being served with process. In the other attachment they did not declare on the attachment bond.

Appellants contended that there was an improper joinder of parties plaintiff; also an improper joinder of causes of action; that appellants' plea in reconvention was good at least against William Goodwin's claim for damages, for the wrongful suing out of the attachment.

The evidence established the issuance of the attachment as alleged from the justice's court, the suit there being for an amount beyond its jurisdiction; the levy upon the mare, the property of William Goodwin, and upon the colt, the property of his wife; that the mare was the only animal of the horse kind belonging to him; that the mare was worth $100; the colt worth $50; that the actual damage sustained by plaintiff, by reason of the seizure, was proven to be some $39.50, money paid out in attending court, and $31 loss of time,— the value of the use of the mare from the time of seizure to the trial was proved to be fifty cents a day over two years, and that both animals were exempt.

The charge of the judge restricted the inquiry of the jury to two issues:

1. Whether the attachment was issued in a suit for an amount over $100, and if so, that it was void, "and

they should find for the plaintiff the actual damage sus-
tained by them, the direct and immediate result of the
levy, loss of time in defending the attachment suit and
expenses paid, and the reasonable value of the use of the
property attached."

2. Whether the colt was the separate property of Mrs.
Goodwin and the mare the only animal of the horse kind
owned by Goodwin. If so, the property was exempt from
execution, and that if the Craddocks levied on them. and
had them, they should find for the plaintiff their value,
and the actual damage sustained by the plaintiff by reason
of the levy, etc.

The jury were instructed that they could not find vin-
dictive or exemplary damages.

The verdict was for the plaintiff, and $200 damages
assessed.

The errors assigned were:

1. Overruling defendants' exceptions to the petition.

2. Sustaining exceptions to the plea in reconvention.

3. Overruling exceptions to citation, and permitting
plaintiff to prove expenses incurred in attending court.

4. Overruling motion for a new trial.

*Randolph & McKenney*, for appellant.

*Maxey & Leigh*, for appellee.

QUINAN, COMMISSIONER.— The exceptions to the petition
of the plaintiffs on the ground of the improper joinder of
parties plaintiff and the improper joinder of causes of
action is not, we think, well taken. It is true that Good-
win might have maintained this suit alone, but the stat-
ute provides that for the recovery of the wife's effects, the
suit may be brought either alone by the husband or
jointly with the wife. For the wrongful seizure of the
exempt property, no good reason can be perceived why

the wife may not also join in the suit.   The law exempts
to *the family* certain property from execution.   The wife
has a direct interest in its recovery.   Her property and
the exempt property were seized by the same parties, by
one and the same unlawful act.   The object of the suit is
to obtain redress for that unlawful act.   The liability of the
defendants was not the less because their seizure was on
many accounts unlawful, as, by virtue of an attachment
from a court having no jurisdiction, or because the
property seized was exempt, or because a portion of it
was the separate property of Mrs. Goodwin.   It could
work no injury to the defendants that their liability be-
cause of the wrong done, on whatever ground, was deter-
mined in one suit.   Certainly the verdict and judgment in
the case would protect them from another suit for the
same cause.   The same strict rules of pleading do not
prevail with us in respect to the joinder of parties
and causes of action, as in other states where the distinc-
tion between law and equity and forms of action is recog-
nized.   In Clegg *v.* Varnell, 18 Tex., 294, it was held to
be no good ground of exception, that in the same suit the
husband and wife prayed an injunction against the sale
of her separate property, and the husband sought to en-
join the collection of and set aside a judgment against
himself in which the wife had no interest.   In that case
Chief Justice Hemphill says: "The courts have always
exercised a sound discretion in determining whether the
subject matters of the suit are properly joined, and whether
parties plaintiffs or defendants are properly joined or not.
The substance of the rule on this subject appears to be,
that each case must be governed by its own circum-
tances.   While defendants are protected, plaintiffs must
not be put to the necessity of bringing two suits instead of
one."   See, also, Dobbin *v.* Bryan, 5 Tex., 284; Story's
Eq. Pl.

We do not doubt that a petition may embrace so many

distinct and separate demands as to be objectionable on the ground of multifariousness, and the petition in this case, we admit, goes very far in that direction; yet the objection of multifariousness is not favored; it is entitled to no liberality of construction. And we believe that the many matters complained of in this suit, may, without inconvenience or injury, be settled in it. They all spring out of the same transaction, and there would seem to be no necessity of more than one suit about them.

The defendants' plea in reconvention was properly overruled. A debt cannot be set off against a claim for damages for the commission of a tort. To permit one who wrongfully seizes upon property not subject to execution for debt, to set off his debt against a recovery for its value, would be virtually to nullify the law declaring certain property exempt.

The third assignment of error is, that "the court erred in overruling defendants' exceptions to the citation issued October 19, 1872, and in permitting plaintiffs to prove expenses incurred in attending court."

Under the view entertained by the court below of the nature of the suit, there can be no question that this assignment is well made. Whatever difficulty there may be in determining what circumstances may or may not be considered in assessing the damages to which the plaintiffs may be entitled for the tortious seizure of the property by a void process, and in spite of its exemption by law, there can be none in holding that expenses in attending court, and loss of time in prosecuting their own suit for its recovery, cannot in this state be submitted to the jury as proof of actual injury. In Harris v. Finberg, where it was sought to recover expenses for attending court as part of the damages for the wrongful issuance of a writ of sequestration, Chief Justice Roberts, in an exhaustive review of the case, cited in Drake's Attachment, and of those decided in other states and our own courts, concludes with these decisive observations: "A number of

suits of similar character have been before the supreme court of this state, and in deciding them the court has repeatedly announced, that where the suing out and levy of the writ is malicious, exemplary damages could be awarded, and where it was only wrongful, without malice, actual damage only could be awarded. In none of them had it been defined what losses and expenses are embraced under the head of actual damage, nor the exact limitations of what may be allowed as such. But it is believed that in none of them has the value of the defendant's time while attending court in the case, or any such incidental expense, been allowed or sanctioned as a proper element of actual damages." 46 Tex.

In the present case, the court in its charge instructed the jury that they could not find any vindictive or exemplary damages by way of revenge or example, but that they could find actual damages sustained by the levy, its direct and immediate result, such as loss of time in defending against the attachment, and expenses paid in its defense. This was but to emphasize the error committed in admitting the testimony, and to render it impossible for us, upon any just, legal grounds, to sustain a verdict, which (looking at the proof in the case) we would certainly find no reason to disturb on the ground of excess, although neither exemplary or vindictive damages might, as the judge charged, be recoverable in this suit.

But we cannot undertake to say how far the jury were misled by this charge, or to what extent the plaintiffs' loss of time, or expenses in defending the attachment, may have entered into their estimate of their damage. We must presume the jury understood and obeyed the instruction of the court. And as this error will require a reversal of the judgment, it is proper we should indicate our views as to the proper measure of damages in the case, whether actual or exemplary, under the state of case alleged.

The suit as originally brought was one sounding alto-

gether in damages. It was very like what, in courts where forms of action are regarded, would be a suit in trespass for the recovery of damages for the wrongful seizure of the plaintiff's property. It charged all the facts upon which a recovery was claimed. It is true there is much irrelevant matter embraced in the petition, but these are substantially the grounds upon which it was sought — the unlawful seizure of the property of the plaintiffs, which by law was exempt from seizure, as the defendants knew and were informed, at a time "when plaintiff and his family were upon a journey, and they and their little children were compelled to walk a long way" in conse-quence, and this under color of process upon its face void, as issued by a justice of the peace in a case where he had no jurisdiction. This is the very gravamen of the charge; all the rest may be considered as merely incidental. How he was summoned to attend court upon an unlawful writ; the time he lost; the loss of his crop; the malicious suing out of an attachment against him, are but circum-stances attending the history of the transaction, the rela-tion of which, if he could not in this action be allowed to recover because of them, could not destroy his right to recover upon what could be properly the basis of a recov-ery. The circumstance of apprehension and aggravation under which his property had been seized, the character of the animals seized, their exemption from sale under ex-ecution, the value of his plow mare, the value of her use to him, the length of time for which he had been de-prived of her use — these were properly, and we think suffi-ciently, alleged in his original petition. And if not, they were certainly with sufficient certainty alleged in his amended petition, and warranted a recovery for exemplary damages. All our actions are special actions on the case. There are no technical words or phrases necessary in the statement to entitle a party to recover. It is enough if the facts and circumstances out of which the right grows were stated, and the appropriate relief prayed for.

It may be admitted that so much of the plaintiffs' petition as sought a recovery against the defendant because of the wrongful, vexatious and malicious suing out of an attachment, inasmuch as it was only filed as an amendment, more than two years after the original seizure, would not on that account have warranted a recovery for exemplary damages against the defendant; and it seems that it was for this cause the judge on the trial below instructed the jury that they could find no exemplary damages in the case; but we think, in view of the other allegations in the petition, of aggravation in the seizure of the property under void process, knowingly, this was to confine the plaintiffs' right to recover within too narrow limits. It was a case in which, if the jury found the allegations of the plaintiffs to be true, they would have been warranted in finding damages beyond the mere actual loss or injury sustained.

The rule of damages applicable to the case as stated may be taken from the opinion of Chief Justice Hemphill in Cole *v.* Tucker, 6 Tex., 266: "That in actions for malicious trespasses on personal property, vindicatory or corrective damages may be awarded, is a rule as old as it is firmly established. Compensation, in the legal and technical signification of the term, is not deemed a sufficient recompense for injuries of this character." And again: "Where a trespass is committed in a wanton, rude or aggravated manner, indicating a desire to injure, a jury ought to be liberal in compensating the party injured in all he has lost in property, in expense for the assertion of his rights, in feeling or reputation, and even this may be exceeded by setting a public example, to prevent the repetition of the act. In such cases there is no certain fixed standard, for a jury may probably take into view not only what is due the party complaining, but to the public, by inflicting what are called in law, speculative, exemplary or vindictive damages." Sedgwick on Damages, 522.

"Damages are graduated by the intent of the party committing the wrong;" but the rule is, that if the rights of another party are invaded, although without evil design, and even if the act be purely accidental, the trespass must be answered for in damages. Sedgwick, 522.

And so in Hillman v. Baumbach, 21 Tex., 205, Mr. Justice Roberts says that "a charge that where a party commits a trespass under the honest belief that he is the owner of property, this is a circumstance to mitigate damages," was rightly refused; and adds: "Such belief would not mitigate the actual damages sustained by the trespass."

In all cases where actual damages are recoverable for unlawful taking of property, the principle which underlies the rule is, to give compensation for the injury actually sustained, and which has resulted immediately and directly from the wrong done; and when no circumstances of malice or oppression or intentional wrong or aggravation are shown, the usual measure of damages is the value of the property taken, and interest. But this rule must vary with the character and uses of the property. So in times of slavery the measure of damages for illegal taking of slaves was the value of the slave and his hire. Pridgen v. Strickland, 8 Tex., 434.

So a workman whose tools of trade were illegally levied upon, was allowed as actual damages not merely their actual value, but for the loss sustained in being deprived of their use in the exercise of his trade.

So for the illegal detention of a yoke of oxen, the owner was allowed to recover for their use while detained. Haviland v. Parker, 11 Mich., 104.

And there are cases in our supreme court where it has been held that, for the wrongful taking of horses or mules, the measure of damages was their value, and the value of their use or hire. This rule is recognized in Hudson v. Wilkinson, 45 Tex., 445, where it is applied to the wrongful taking and detention of a wagon and team. In

that case Mr. Justice Moore condemns the mode of compensation adopted, of valuing the hire by the day or the month, when the period was protracted or the litigation prolonged. It is a rule which in many cases would do simple justice, but in others might be pushed to the verge of absurdity. It is not perhaps possible to lay down a rigid and unbending rule, applicable to all cases. It must of necessity, as we have said, vary with the character of the property, and somewhat with the peculiar circumstances of the case. The thing to be kept in view is that the party shall be compensated for the injury done. Where money or goods, having a price in market, are the subject of the wrong, the value and the value of the use of which the party has been deprived, in the shape of interest, would be adequate compensation. It is but the application of the same rule which permits the recovery of the hire, as for the use of horses or work animals. Very clearly the seizure of the plaintiffs' plow animal or work horse in this case would be very poorly compensated for by the payment of interest for the time which they had been deprived of them, and then only, but it is equally clear that their value and hire, measured by the month or the year for the long period since their seizure to the time of trial, would be absurdly excessive. We think no more equitable rule can be adopted in determining the plaintiffs' actual damages than to allow in any event, if plaintiffs made out a case for actual damages, an amount not less than the value of the property, with interest to the time of trial; but the jury should also take into consideration the value of the use or hire of the animals seized for the whole time of which the plaintiffs have been deprived of them, and allow such an amount for actual damages as will compensate the plaintiffs, whether computing it by the rule of interest or that of hire or value of the use, as may seem to them most adequate to that result.

Should, however, the proof establish to the satisfaction

of the jury that the seizure of the plaintiffs' property was made not only wrongfully, but willfully, oppressively, rudely and with circumstances of aggravation, under color of process void upon its face, they may find such damages beyond the actual injury sustained, as in their judgment will compensate the plaintiffs for the injury done them in property and feelings, and as punishment for the wrongful acts, and tend to prevent the repetition of the like injury.

The proper disposition of this case is that it be reversed and remanded.

·REVERSED AND REMANDED.

[Opinion delivered March 24, 1881.]