## MONTGOMERY v. GALLAS. (No. 6419.)

(Court of Civil Appeals of Texas. San Antonio. June 1, 1920. On Motion for Rehearing, Nov. 3, 1920.)

**1. Chattel mortgages ⬡172(6)—Where value of mortgagee's use of chattels exceeds debt, mortgagor may recover excess and the chattels.**

The rule that the mortgagor cannot recover possession of the mortgaged property from the mortgagee in rightful possession without paying the mortgage debt does not apply where the value of the use to which the mortgagee has put the mortgaged property exceeds the mortgage debt, and in such case the mortgagor may recover the mortgaged property and the excess of the value of such use over the amount of the mortgage debt.

**2. Chattel mortgages ⬡172(6)—"Value of use" means "rental value."**

The term "value of the use" of property subject to chattel mortgage, and withheld by the mortgagee from plaintiff mortgagor, when unaccompanied by allegations showing a special use for a particular purpose, means no more than "rental value"; and the measure of plaintiff's damages is the rental value of the mortgaged property, a road-making outfit, for the time for which it was unlawfully withheld from plaintiff by defendant mortgagee.

**3. Chattel mortgages ⬡172(6)—Damages for mortgagee's unlawful detention stated.**

As to the measure of the mortgagor's damages for mortgagee's wrongful detention of the mortgaged property, compensation to the mortgagor is not the limit of recovery, but one of the considerations fixing the measure of damages is that the wrongdoer shall not be allowed to profit by his own wrong, so that the mortgagor may recover, in addition to the property or its value, not merely the interest on such value during the time of detention, but the value of the use of the property during such time in case it exceeds interest; and the principle of preventing profits from wrongdoing renders it immaterial that the injured mortgagor replaces the property by purchase, or that he in fact loses money in the use of the property so purchased, and also limits the value of the use to the use of the property for the purpose alone for which it was used by the mortgagor and the mortgagee, rather than the value of the use for other purposes for which it was adapted and for which it could have been hired out by the owner, at least in the absence of pleading by the mortgagor that he could and would have rented out the property for some other use.

**4. Trial ⬡215—On submission of special issue as to damages, error to refuse instruction aiding determination.**

In action involving damages for loss of use of personalty for over two years, in which issue as to the value of the use was submitted, defendant was entitled to an instruction which would have furnished them a guide concerning their duty in arriving at such value.

**5. Trial ⬡216, 252(20)—Charge not to estimate value of use of property by value for short period should have been given; refusal of instruction not justified because of negative portion not sustained by evidence.**

In action involving damages for loss of use of personalty for over two years, court should have given requested charge that the jury should not base their estimate on the daily, weekly, or monthly value of the use, but to determine the value of the use for the entire period, though testimony as to monthly value had been admitted without objection, and refusal was not justified because, as there was no evidence of daily or weekly value of use, charge was on weight of evidence.

**6. Trial ⬡91—Refusal to strike evidence admitted without objection, discretionary.**

Refusal to strike out evidence admitted without objection is discretionary with the trial court to some extent.

**7. Appeal and error ⬡1052(5) — Admission of evidence of sheriff fixing value of property of which mortgagor deprived, harmless to mortgagee.**

In an action by a chattel mortgagor against the mortgagee for damages from wrongfully withholding the property, admission in evidence of the sheriff's valuation of the property *held* harmless to defendant mortgagee, the finding of value fixing less than half of the sum to which the sheriff testified.

**8. Evidence ⬡501(7) — Plaintiff mortgagor not qualified to give opinion on value of property whose wrongful withholding sued for.**

Plaintiff mortgagor suing defendant mortgagee for wrongful withholding of the mortgaged road-grading outfit, whose only knowledge concerning the value of the use of such property was based on what was paid per month by persons who had rented a pair of mules, wagon, and harness, *held* not qualified to make an estimate of the rental value of the property for the period for which he sued.

**9. Evidence ⬡18—Common knowledge that only in exceptional circumstances is use of property worth more than its value.**

It is a matter of common knowledge that there would have to be very exceptional circumstances to make the use of property for a year worth 50 per cent. more than its value.

**10. Evidence ⬡588—Jurors are judges of credibility of witnesses.**

It is the province of the jury to pass on the credibility of witnesses, and they may disregard the testimony of a witness, unimpeached and uncontradicted, if they believe his testimony untrue from his manner of testimony, exhibiting prejudice, his interest in the result, or other indicia of unreliability.

**11. Appeal and error ⬡1050(1) — Admission of estimate of value by unqualified witness prejudicial.**

In an action by the mortgagor of a road-making outfit against the mortgagee for the value of its use while wrongfully withheld, admission of the unqualified mortgagor's tes-

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

timony as to the rental value of such property *held* prejudicial to defendant mortgagee:

**12. Damages ⚖️=215(3)—Instructions on exemplary damages properly refused.**

Plaintiff's requested special charge relative to exemplary damages obligating the jury to assess the amount at not less than would be reasonably proportionate to the amount of actual damages, was properly refused.

Cobbs, J., dissenting.

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by Paul Gallas against W. T. Montgomery. From judgment for plaintiff, defendant appeals. Reversed, and cause remanded. See, also, 202 S. W. 993.

Eskridge & Williams and W. A. Wurzbach, both of San Antonio, for appellant.

G. R. Smith, of McKinney, and Don A. Bliss, of San Antonio, for appellee.

MOURSUND, J. We adopt the statement of appellant, with a correction in a date, suggested by appellee:

"Appellee, Paul Gallas, instituted this suit against appellant, W. T. Montgomery, in the district court for the Forty-Fifth judicial district on June 10, 1919, by petition alleging, in substance, that on the 1st day of June, 1917, he, Gallas, owned and was entitled to the possession of certain mules, wagons, harness, tents, and a certain water wagon, alleging a value for each of said items; that on said date said personal property was in the actual possession of said Montgomery in the state of Kentucky, and that said Montgomery had continuously since said date withheld the possession of said property from said Gallas, but had used the same for his, the said Montgomery's, own use and benefit, and was still holding and using the same.

"That the value of the use of said property during the whole of said period was one thousand six hundred twelve and $50/100$ ($1,612.50) dollars per year; that by reason of said Montgomery's improper care of said property it had depreciated in value to the extent of two thousand four hundred ($2,400.00) dollars; and prayed for judgment restoring possession to him, and for his damages measured by the value of the use and depreciation in value of said property, with interest thereon.

"On October 6, 1919, said Montgomery answered by general denial and demurrer.

"On January 5, 1920, the day the case went to trial, plaintiff filed his first amended original petition, by way of which he alleged in substance:

"That on June 11, 1916, he, Gallas, owned and was in possession of a certain outfit called a contractor's road-making outfit, consisting of certain mules, wagons, harness, tents, and a water wagon, all being located in Kaufman county, Texas, and being then and there used by plaintiff in constructing roads; that the mules were then and there worth $275.00 each, the wagons seventy-five ($75.00) dollars each,

the tents fifty ($50.00) dollars each, the water tank sixty ($60.00) dollars, and the harness fifty ($50.00) dollars per set.

"That on said June 13, 1916, said Montgomery, through an illegal sequestration and subsequent replevy, deprived said Gallas of the possession of said property and took possession thereof himself.

"That on March 19, 1917, in a suit between the parties, then pending in the Seventy-Third judicial district of Texas, it was adjudicated that said writ of sequestration was illegally issued, and said writ was by judgment and order of court quashed and suppressed, with the further order that the property taken from the possession of said Gallas under said writ be restored to the possession of said Gallas.

"That in said suit in which the writ of sequestration was quashed the said Gallas was by cross-action seeking judgment against the said Montgomery for the wrongful detention of said property by him, pleading especially that he was entitled to recover of said Montgomery the value of the use of said property during the time Montgomery wrongfully detained said property. Montgomery in said suit denied that he was liable to said Gallas for detaining said property. That a trial was had in the district court for the Fifty-Seventh judicial district, to which court said cause had been transferred, and on the issues so joined a verdict of the jury was obtained, and on said verdict judgment entered establishing the possession of said property on the part of said Montgomery as wrongful, and holding said Montgomery liable in damages to said Gallas for the wrongful detention thereof; said judgment having been obtained on the 1st day of June, 1917, and being, in part, in favor of the said Gallas, and against the said Montgomery, for the sum of two thousand two hundred ninety ($2,290.00) dollars as damages for the value of the use of said property for a period beginning ten days after the date of the levy of the writ of sequestration and down to the date of said judgment, and offset said amount against the sums due on certain notes, secured by a chattel mortgage on said property, made the basis of said Montgomery's suit against the said Gallas.

"That said Montgomery prosecuted an appeal from the judgment next above referred to, and that this honorable Court of Appeals affirmed the judgment of the district court in so far as the award of damages in favor of Gallas and against Montgomery for the value of the use of said property was concerned. That, by reason of the action of the Court of Civil Appeals as set out, the judgment and order of the district court of Bexar county for the Seventy-Third judicial district of Texas, adjudicating that said writ of sequestration was illegally issued, and ordering said Montgomery to restore said property to the possession of said Gallas, and also the judgment of the district court of Bexar county for the Fifty-Seventh judicial district, adjudicating that the said Montgomery wrongfully detained said property from the possession of said Gallas, became absolutely final, and that said judgments and order were in full force and effect, and had been in full force and effect from the dates upon which they were respectively entered.

---

⚖️=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"That in spite of said final judgments, above recited, the said Montgomery had continuously failed and refused to obey the order of said court requiring him to deliver possession of said property to said Gallas, but had refused deliberately and maliciously to return said property to said Gallas, and still deliberately and maliciously refused to so return the same.

"That the value of the use of said property from June 1, 1917, to the time of filing of said first amended original petition was reasonably the sum of nine thousand nine hundred sixty ($9,960.00) dollars for each and every year, making a total to the date of the filing of said pleading of twenty-four thousand seven hundred fifty-four ($24,754.00) dollars.

"That during the time said Montgomery was unlawfully withholding the possession of said property from Gallas, through his improper care of the same, the value of said property had depreciated to the extent of four thousand four hundred fifty ($4,450.00) dollars.

"That said Montgomery has so acted in the premises for the purpose of injuring plaintiff deliberately, willfully, and maliciously; that said Montgomery had removed said property from the state of Texas and into the state of Kentucky, and instead of bringing said property back to the state of Texas, so that same could be utilized for the purpose of paying off and satisfying a certain judgment in favor of Montgomery and against said Gallas, said Montgomery had kept said property and used the same for his own benefit in utter disregard of the judgment of the court, thereby becoming liable to said Gallas in the sum of seven thousand ($7,000.00) dollars as exemplary damages, in addition to the actual damages theretofore set up by said Gallas.

"In said amended pleading said Gallas further alleged that he had been informed and believed that Montgomery had disposed of some of said property, or that some of said property was beyond the jurisdiction of the court, in which said suit so filed; pleading his inability to designate the property so disposed of or held beyond the jurisdiction of the court, and asking for judgment for the value of any of said property not produced or accounted for by the said Montgomery; pleading the market value of said property at the time of the trial as follows: two hundred ($200.00) dollars per head or four hundred ($400.00) dollars per span for the mules, forty ($40.00) dollars for each wagon, fifty ($50.00) dollars per set of harness, and forty ($40.00) dollars for said water wagon; further alleging that the tents, even had they been properly cared for, would on the date of the filing of said pleading be worthless.

"In said amended petition said Gallas pleaded for a judgment ordering said property restored to him, for judgment for the value of the use of said property from the 1st day of June, 1917, to date of judgment, for depreciation in the value of said property during this detention, for the value of such of said property as was not produced or properly accounted for, and for his exemplary damages.

"To said amended pleading the defendant, Montgomery, replied by first amended original answer, containing general demurrer and general denial, and pleaded especially that during all the time said property was withheld from the plaintiff he, the said Montgomery, held said property as mortgagee for his protection as provided for in a mortgage on said property given him by said Gallas, denying that he asserted any claim of ownership to said property. Said Montgomery further alleged that in said suit of Montgomery v. Gallas, No. B–12359, tried in the Fifty-Seventh district court of Bexar county, being the same suit in which was rendered the judgment pleaded by said Gallas, that he, the said Montgomery, recovered judgment against Gallas for one thousand five hundred fifty-seven and $^{56}/_{100}$ ($1,557.56) dollars, together with interest thereon from the 26th day of May, 1917, and costs of court, said sum remaining after allowing the recovery on said Gallas' cross-action; that on said judgment there was, at the date of filing of said amended answer, due and unpaid the sum of three thousand three hundred seventy and $^{71}/_{100}$ ($3,370.71) dollars; that the payment of said sum was secured by chattel mortgage upon the property mentioned in plaintiff's amended petition, and that the judgment of the court above referred to had awarded and that there had been issued an order of sale then alive and outstanding under which said property was to be sold; that until said judgment was satisfied the plaintiff, Gallas, was not entitled to the possession of said property, but that possession of same might lawfully remain with the defendant.

"Defendant, Montgomery, further prayed that should the said Gallas recover any sum in said suit that the amount of his (the said Montgomery's) judgment in said cause No. B–12359 be offset against such recovery.

"Plaintiff, Gallas, then, on said January 5, 1920, filed a supplemental petition excepting to the allegations of defendant's amended answer on various grounds, denying the allegations contained therein, and alleging, further, that defendant, Montgomery, never took possession of said property under any power of authority that might have been given in said chattel mortgage, but that the defendant, Montgomery, waived such power and authority, should any have been given in that mortgage, sued out writ of sequestration, and took possession under a subsequent replevy."

Pursuant to a verdict on special issues, judgment was entered in favor of Gallas for $9,194.72, with interest from January 29, 1920, at the rate of 6 per cent. per annum; also adjudging the possession of the property to Gallas. "In said judgment the value of the several items of property was fixed, and it was further ordered that said Gallas recover of and from the said Montgomery the further sums as fixed by the court as the value of such said property as was not produced by the said Montgomery."

[1] The remedial system of Texas being independent of forms of action, and the facts pleaded and proved being sufficient to entitle plaintiff to recover damages measured by the value of the use of the property, and to recover the mortgaged property if it should appear that the value of the use recoverable was equal to, or in excess of, the mortgage debt, it cannot be held that the court should have instructed a verdict for the defendant.

We are not unmindful of the decisions to the effect that where the mortgagee's original taking of possession is wrongful, but before trial conditions arise which would authorize the mortgagee to take possession, the mortgagor could not recover possession without paying the mortgage debt. See L. R. A. 1915E, note 194-195. This does not mean, however, that the mortgagee could use the property and not account for the value of the use, nor that if he has been fully paid by such value that the mortgagor could not recover the property.

[2] Appellant contends that the court should have given a special charge instructing the jury that, in determining the reasonable value of the use of plaintiff's outfit, they should determine what would have been the value of such use to plaintiff and no other person. The plaintiff pleaded that the value of the use of the property was reasonably worth $9,660 each year, or $24,754 for the total period He did not allege that by reason of any special circumstances the use of the property had a special value to him. The term "value of the use," when unaccompanied by allegations showing a special use for a particular purpose, means no more than "rental value." Sedgwick on Damages (9th Ed.) § 190; Alexander v. Bishop, 59 Iowa, 572, 13 N. W. 714; Wood v. State, 66 Md. 61, 5 Atl. 476; Maryland Ice Co. v. Arctic Mfg. Co., 79 Md. 103, 29 Atl. 69. The measure of damages, therefore, would be the rental value of a contractor's road-making outfit, such as was described in the petition for the period for which it was shown to have been unlawfully withheld from plaintiff.

[3] It is urged by appellant that the underlying principle is compensation for loss sustained, and that, as Gallas acquired similar property and made no money therewith, he should not be permitted to recover. Our courts state the rule applicable as follows:

"The very facts of this case is an apt illustration of the propriety in some cases of extending the measure of damages beyond that prescribed by the general rule. In this case the plaintiff was deprived of a wagon worth about $70, with a use per day, as shown by the evidence, of the reasonable value of about 75 cents. The trespass was committed on the 4th day of January, 1892, and the judgment was rendered on February 26, 1892. Giving the plaintiff the value of the wagon, with legal interest on that amount, would certainly not be compensation for the loss sustained by reason of the wrong committed. The use that he is deprived of is almost as valuable as the thing itself; and that value of the use with the property itself is conferred upon the wrongful trespasser, if the plaintiff is confined in his recovery to the value and interest. Such a rule would not only deprive the plaintiff of his property, but would permit a trespasser to profit by his own wrong, and it would afford a profitable enterprise to such wrongdoers in obtaining wrongful possession of property especially valuable for its use." Ward v. Odem, 153 S. W. 635; Moore v. King, 4 Tex. Civ.

App. 397, 23 S. W. 484; Waller v. Hail, 46 S. W. 82; Railey v. Hopkins, 50 Tex. Civ. App. 600, 110 S. W. 779; Endel v. Norris, 15 Tex. Civ. App. 140, 39 S. W. 608.

In the last cited case the court recognizes, but questions the wisdom of, the rule allowing the recovery of the value of the use beyond the immediate and temporary consequences necessarily resulting from the loss of possession. The editor of L. R. A. 1915B, in a note on page 293, expresses the same thought, as follows:

"Doubtless, however, the exception should not be applied so as to permit the recovery of the excess of the value of the use of the property over the interest, unless the plaintiff's loss of that excess may be regarded as the proximate result of the taking of the property by the defendant rather than of the plaintiff's fault in failing to replace the property promptly."

These expressions represent the viewpoint that compensation is the limit of recovery, but it seems from the quotation from our decisions that one of the considerations entering into the adoption of the rule adhered to is that a wrongdoer should not be permitted to profit by his own wrong; he should not be permitted to make use of property or rent it out, and retain the value of the use when it exceeds interest, and pay only the amount of the interest to the wronged person. If this principle is correct and furnishes a legitimate basis for the rule to be applied in measuring damages, it must be immaterial whether the injured person replaces the property by purchase and in fact loses money in the use of such other property. He might be fully compensated by allowing him to recover the value of the use up to the time of replacing the property, and allowing 6 per cent. on the value of the property from that time to the time of the trial, but at the same time the wrongdoer would be profiting by his act if allowed to retain the value of the use in excess of the amount he paid as interest. It would seem, however, that when the compensation feature has been taken care of, the right to prevent the wrongdoer from reaping a profit would be fully secured when he is made to pay the value of the use of the property for the purpose for which it was used by the owner and by such wrongdoer. To charge him with a greater sum, representing the value of the use for other purposes for which it could have been hired out, but would not have been, had it been retained by the owner, it seems would be to go further than to provide compensation and prevent a profit, and to inflict a fine or penalty. If it be the contention of the mortgagor that by reason of special conditions he could and would have rented his property for a special price, it would be necessary to plead as well as prove such facts.

[4, 5] In view of the foregoing conclusions we overrule assignments 2 and 5. We conclude, however, that in view of the facts in

this case special charges Nos. 2 and 3 should have been given. While it is true that the issue submitted by the court required the jury to determine what was the reasonable value of the use of the outfit for the entire period, the defendant was entitled to the instruction asked, which would have furnished them a guide concerning their duty in arriving at such value. Nor can the refusal be sustained on the ground that there was no evidence of the value of the use by the day or week, and that, therefore, the charge was on the weight of the evidence. The reference to daily or weekly value of use could not have misled the jury or injured plaintiff. It was embraced in that part of the instruction wherein the jury were told what they should not use as a basis, and served to illustrate the idea made plain in the affirmative part of the instruction, namely, that value of the use for a short period might be much greater proportionately than for a long period. The use of such surplusage in the negative portion of the charge, wherein the jury were told what would not be the proper way to estimate damages, could not justify the refusal of the charge, for it was correct in so far as it affirmatively told the jury how to arrive at the amount, and it was just as fair to plaintiff as if the reference to the method improper to pursue had been confined to monthly value, instead of using the expression, "daily, weekly, or monthly value."

[6, 7] Complaint is made because the court refused to strike out a statement made by the sheriff, containing an estimate of the value placed by him on the property at the time same was replevied. The refusal to strike out evidence admitted without objection is discretionary with the trial court to some extent. Railway v. Lamothe, 76 Tex. 219, 13 S. W. 194. In addition, it does not appear that any harm could have resulted from the admission in evidence of the sheriff's valuation of the property, for the undisputed evidence was to the effect that the mules were worth, at the time such valuation was made, the sum fixed by the sheriff. It could not, therefore, have influenced the finding of the value at the time of the trial, which was less than half of said sum. So far as the wagons and sets of harness are concerned, the value at the time of trial was found to be greater than that fixed by the sheriff, and it cannot be contended that the sheriff's estimate influenced the finding of the jury with respect to said items. The finding of the jury with regard to the value at the time of the seizure furnishes no basis for any part of the judgment. The sixth, seventh, and eighth assigments are overruled.

[8-11] When plaintiff, Gallas, undertook to testify concerning the value of the use of the road-grading outfit, objection was made to his qualification to testify, and it was developed that he did not know the rental value of such an outfit, and that the only knowledge he had at all concerning the value of the use was based upon hearsay as to what was paid per month at Wichita Falls by persons who rented a pair of mules, wagon, and harness. We think the witness failed to qualify to make an estimate of the rental value of the property for the period for which he sued, and there was no contention on his part that said outfit had any peculiar value to him greater than the rental value. An effort was made to show him to be qualified by eliciting the statement that there was no market for the hire of "mules and outfits of this character" in the state, and by then having him state how long he had been in the contracting business. The inquiry was then narrowed down to the value of the use of one team, wagon, and harness per month, and he was never asked whether he could estimate the value of the use of the entire contractor's outfit for 31 months, or to make such an estimate, it being assumed apparently that the value of the use of 11 teams for 31 months would be arrived at by taking the value of the use of one team for one month. When interrogated further, he twice made answers indicating that he based his estimate upon what he had heard with regard to what was paid for the use of a pair of mules, wagon, and harness at Wichita Falls, and not upon his own knowledge of the value of the property, the depreciation or injury caused by use, the amount that could be earned therewith, or any other elements which might enter into an estimate made for the purpose of showing the actual value of the use of property in the absence of a market value of such use. If it be true, as testified by him, that there was a demand for the use of teams "up in that country," it would seem that proof could be obtained of transactions sufficient to show a rental value. We do not consider his testimony, given subsequent to the ruling of the court holding him disqualified, as different, in substance and effect, from that given before the ruling of the court, and believe the court erred in changing his ruling. The jury based its verdict on Gallas' testimony, and reached the result attained by taking his estimate of the rental value of a pair of mules per month at Wichita Falls, based, as he candidly admitted, on pure hearsay, and multiplying said sum by the number of months, 31. Some of the jurors admitted they did not believe the testimony of Cullom and Griffin, and had no other evidence before them except that of Gallas, so adopted his figures as a basis. This was natural in view of the fact that his figures would result in a verdict for less than half of the sums testified to by Cullom and Griffin. It appears from the testimony of some of the jurors that Gallas' estimate of the value of the use of one team per month coincided fairly well with a statement by the juror Herrera, who told his fellow jurors he had once rented out a small team and harness, without a wagon, for $35 a month. The

testimony of the jurors indicated that two of them thought that what Gallas claimed was too much, but finally agreed to the verdict. The jury would naturally look with much doubt upon all the testimony introduced with respect to value of the use for the reason that Gallas in his original petition, filed June 10, 1919, only claimed such value of the use to be $1,612 per year, but, after obtaining the depositions of Cullom and Griffin, amended and changed the figures to $9,660 per year. When asked to explain how he came to make this change in six months' time, he said: "Well, we are working now in the oil field and getting bigger prices for our work; last June I was working on the Denver Railroad. No; I was not working in the oil fields in 1917." It was also shown by the pleadings and judgment in the former case, introduced by plaintiff, that the jury found the value of the use of said property for a period of about 10 months preceding the beginning of the period sued for herein to be $2,290. The plaintiff also introduced the valuation placed by the sheriff upon the property at the time it was replevied by defendant, and said valuation, $6,805, was found by the jury to have been the reasonable market value at that time, and they also found that the mules had each declined in value $172.70. In view of these figures, the estimates of Cullom and Griffin must have appealed to the jurors as undoubtedly erroneous. It is a matter of common knowledge that there would have to be very exceptional circumstances to make the use of property for a year worth 50 per cent. more than its value. "It is the province of the jury to pass on the credibility of the witnesses, and they may disregard the testimony of a witness who has neither been impeached nor contradicted if they believe his statements to be untrue from his manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicating that the evidence was not reliable." Railway v. Runnels, 92 Tex. 305, 47 S. W. 971; Blount-Decker Co. v. Martin, 190 S. W. 232; Railway v. Decatur Oil Co., 193 S. W. 394. Aside from the testimony of jurors, which it would probably not be proper to consider except on issues relating to misconduct, it is deducible from the verdict that the jury did not credit the testimony of Griffin and Cullom, or at least that it is impossible to say that they did credit the same. It is further shown by the record that the jury might have good grounds for so doing. It cannot be held, therefore, that the admission of Gallas' testimony constituted harmless error. We see no misconduct on the part of the jury in so far as it based its finding on Gallas' testimony. The error lies in permitting the introduction of the evidence, and in failing to give the jury a charge which would have put them on notice that the value per month of one team could not furnish a legitimate basis

for estimating the value of an entire grading outfit for 31 months. The ninth, tenth, eleventh, and thirteenth assignments are overruled. The twelfth assignment is sustained.

[12] Appellees present a cross-assignment complaining of the refusal of the court to submit requested issues and instructions relating to exemplary damages. We do not think the court erred in refusing to submit the issue, and, had he decided to do so, he would have erred had he adopted, as the proper guide for the jury, the two special charges requested by appellee. The first ignores the element of malice, although such element was the one relied on in the pleadings. If it be conceded that the facts show no more than the things mentioned in this charge, it is evident that exemplary damages are not recoverable. The second states correctly a rule used in determining whether a verdict for exemplary damages is excessive, but such rule is not an absolute one to be applied in all cases in fixing a limit beyond which punitive damages may not be imposed. Tynberg v. Cohen, 76 Tex. 416, 13 S. W. 316; Cotton v. Cooper (Com. App.) 209 S. W. 135. It is not the law that the jury must in all cases in which they find plaintiff entitled to exemplary damages assess the amount at not less than would be reasonably proportionate to the amount of actual damages. The special charge would have required the jury to do this, and it was clearly erroneous.

The judgment is reversed and the cause remanded.

## On Motion for Rehearing.

The plaintiff having sued for the value of the use of the contractor's outfit, he could certainly not object to a charge limiting him to such value of use. The defendant would not have been permitted to show that the value of the use was less if the property had been applied to some use other than that of a contractor's road-grading outfit. If plaintiff had desired to raise the issue that he could and would have rented out the property for some other use, he should have so pleaded.

If it be true, as stated in the case of Vaughn v. Charpio, 213 S. W. 950, that "it is not proper to estimate the value of the use of a team and wagon for a period of 17 months by proof of the value of its use by the day;" which holding seems to be fully sustained by the cases cited therein, it must be true that a person seeking to recover for the use of many teams and wagons for a long period of time should furnish to the court some evidence of what the value of the use for that period of time would be. If he does not do this, but merely introduces evidence of the value by the day or month, which is so obviously inadequate to furnish a basis for the long period as to meet the condemnation of the courts, on what theory can his demand be granted to the effect that

the jury ought in his special case to be permitted to use as a basis for estimating the long time the very rule condemned by the courts? There is, of course, no merit in the contention that just because the court asked the jury to find the value for the long period, it was unnecessary to tell the jury that it should not make its estimate by adopting a rule condemned by the courts as obviously unsound. If plaintiff's testimony concerning the value of one wagon and team for one month is subject to the objection pointed out in the cases of Hudson v. Wilkinson, 45 Tex. 453, and Railey v. Hopkins, 50 Tex. Civ. App. 603, 110 S. W. 779, to the effect that it furnished no reasonable criterion for an estimate for the time the jury were called upon to assess the defendant, then it seems the plaintiff failed to furnish such a basis for estimating the value of the use as would be deemed sufficient in law. The defendant requested a charge, in effect, instructing the jury that it could not use testimony which furnished no reasonable criterion for an estimate for the purpose of assessing the damages required to be estimated. To hold that such a charge should not be given is to hold that plaintiff can introduce evidence insufficient to furnish a criterion for assessing his damages, and in some mysterious way such evidence will become sufficient, or at least it ought to be left optional with the jury to determine whether or not it is sufficient.

The assignment relating to the testimony of Gallas is not briefed as well as it might be, but we consider it sufficient to raise the issue whether Gallas had qualified to testify to the value of the use of the property. We concluded that his testimony as a whole showed that, despite much effort to have him give his opinion from his experience as a contractor, he disclosed that his statement was based on what he was told concerning the renting of a wagon and team at Wichita Falls.

In the intemperate argument filed in behalf of appellee it is stated that this is not a case in which the judgment of the court can be reviewed by another tribunal, and that therefore all that appellee can do is to appeal to the sense of fairness of the court. This statement discloses a want of confidence in the interpretation placed upon the holdings of this court as described in the argument. Surely if this court has made the holdings of law described, one of which is asserted to be entirely original, not supported by a single decision of a single court, we may with confidence believe that the Supreme Court has jurisdiction of the case.

We see no reason for changing the conclusions announced in the original opinion, and overrule the motion for rehearing.

COBBS, J. (dissenting). Appellant presented and urged 13 assignments of error.

All the assignments were overruled by the majority opinion of this court except three, and those three will be briefly discussed.

Taking the viewpoint of the case of the majority opinion, it should have been followed with an affirmance of the judgment.

Assignment No. 3 is based upon special charge No. 2, requested by appellant and refused by the court, as follows:

"Gentlemen of the Jury: At the request of the defendant, and as part of the law of this case, you are instructed that, in determining the reasonable value of the use of the plaintiff's outfit, you will limit the same to the reasonable value of the use of said outfit as a contracting outfit and devoted to such use as the plaintiff had carried on prior to the seizure of said outfit under sequestration."

This charge limits the jury to a consideration only of the value of the use of said outfit, as a contracting outfit, devoted to such use as plaintiff had carried on prior to the seizure of said outfit under sequestration. Then in the third charge, refused, to the same effect, which specifically tells the jury not to base their estimate upon the daily, weekly, or monthly value of the use of said outfit, nor base the estimate upon the value of the use of one team, wagon, and harness for either the whole of said period or a shorter period than the whole, but "You will determine the value of the use of said entire outfit as described in the plaintiff's petition for said entire period of time from June 1, 1917, to this date." The court had already told the jury in instruction No. 1 to ascertain the value of the use of the plaintiff's outfit from the 1st day of June, 1917, to this date. Hudson v. Wilkinson, 45 Tex. 453.

He was entitled to recover the value of the use of the property for any purpose for which it was adapted. Every quality or value of the property that entered into it, and the use to which it could be put, is a proper matter for the jury to consider. The particular purposes to which property is devoted or may be adapted may be shown by evidence. It is to be conceded that jurors are reasonable men of ordinary judgment and intelligence, and from the evidence introduced and permitted to go before them, under definite instructions from the court, will be able to ascertain the value of the use of the "outfit." The proof of value must of necessity and at last come from the opinion and judgment of witnesses based upon what they hear, whether in a sense that be hearsay or not. If it has no market value, then it may be shown by those elements affecting the same as they exist, such as costs, its utility, and the uses to which it may be put.

As the court instructed the jury to ascertain the value of the whole for a definite period, it would have added nothing to tell

them not to base their estimate in the certain way named upon the value of one team, wagon, harness, etc., for a shorter period than the whole, and then tell them to determine the value of the use of the entire outfit for the entire period. Craddock v. Goodwin, 54 Tex. 588; Railway v. Brousard, 69 Tex. 624, 7 S. W. 374. Whether there was evidence of any such item for a month or more of a single team or harness, etc., the jury had a right to consider and base their judgment upon the whole testimony introduced, and it would have been error to so instruct and tell the jury not to base their estimate upon this testimony in connection with the whole to reach such verdict as they were instructed by the court to ascertain for the entire period. There is no objection to the testimony. If the testimony was properly admitted in the case on the issue involved, such a charge would have been error. Railway v. Brousard, 69 Tex. 624, 7 S. W. 378; for as Judge Stayton said:

"A charge of this kind is objectionable in any case, and it is always better to leave the jury to reach their conclusions, under the evidence properly before them, and the charge of the court as to the law of the case, through such modes of reasoning and processes of thought as each juror may, unaided by suggestions from the court, naturally and without constraint pursue."

Such an instruction would have prevented appellee from proving a single element of damage shorter than the named period of time, whether it be one team, or any of the property, whether for one month or many months. The testimony showing that appellant had deprived him of the use of his property for nearly three years, the inquiry was directed for the certain period of such claimed illegal holding, and the jury should be permitted to take into consideration the value of the use or hire of the property for the whole time for which the appellee was deprived of its use. Craddock v. Goodwin, 54 Tex. 588. From this it appears to us that there was no error in the trial court's ruling.

This brings us to the last assignment sustained by the majority opinion as the twelfth, as follows:

"The court erred in permitting the plaintiff, Paul Gallas, while on the stand as a witness in his own behalf, to testify in answer to questions propounded by his own counsel, and over defendant's objection, that: 'In the last eighteen months it was, they paid big, far bigger price than they did before that, over two years ago, commencing back the 1st of June, 1917. I should think about $35 per month. The value of the use at $35 per month lasted till about a year ago. From about a year ago to the present time they are paying big prices for work. I think about $40 per month;' the witness having testified earlier in the trial that he did not know the value in use of an outfit such as his own, the court by its rulings having permitted an examination of the witness seeking to establish the rental value of a suit of one team, wagon, and harness, over the objection of defendant, and having expressly ruled that said witness was not qualified to testify as to such rental value."

The only proposition thereunder is:

"Where a witness has been held disqualified to testify concerning the rental value of property, it is error to permit said witness to testify in response to questions concerning the value and use of such property, where from the witness's answer it is made plain that he has in fact testified concerning rental value."

And the only statement thereunder is:

"The proceeding complained of is fully set out in defendant's bill of exception No. 1, found in second preceding statement. On account of its length, we beg to make reference rather than to repeat."

There is no other preceding or any other additional statement under said assignment, and no authorities whatever cited thereunder to support the contention. Turning to the so-called "second preceding statement," we find no bill of exception set out, but turning to cited page in the transcript, we find a bill of exception No. 1, which complains of the court in permitting defendant to testify as to the use of the team of mules and wagon without stating the grounds; but, from the colloquy engaged in throughout the bill by counsel, the contention was that the witness was disqualified to testify. The ending of the bill shows this true, for he says:

"To which action of the court in, after having held, as hereinbefore shown, that witness was disqualified, thus permitting him to testify over the objection of defendant as to the value of the use of the team of mules and wagon," etc.

He cannot except on one ground in the trial court and assign another different one here. Kimmarle & Hirsch v. Ry., 76 Tex. 692, 12 S. W. 698. The appellant made no objection to the character of evidence, and the verdict is far less than placed by the witnesses. The objection throughout was as to the disqualification of the witness to give the testimony at all on the subject. Hudson v. Wilkinson, supra.

In discussing this assignment we do not believe any reference should be made to the statements made by the jury, nor the opinion in the least predicated thereupon; for their action in the consideration of questions discussed by them in the jury room are not subject to review unless had in such way as to show misconduct. It is not claimed there was any misconduct there, and the trial judge found there was none.

The only testimony complained of in this assignment in effect is:

"In last 18 months paid bigger prices than before that—over two years ago, commencing

back the first of June, 1917, $35 per month. The value of the use at $35 per month lasted until about a year ago. From about a year ago to the present time they are paying big prices for work, think $40."

Take this assignment as it is, in the abstract, and without any statement under it, it is not clear. It proceeds and says the witness had testified he did not know the value in use of an outfit such as his own, the court having permitted an examination of the witness seeking to establish the rental value of a suit of one team, wagon, and harness,' over the objection of defendant, and having ruled that said witness was not qualified to testify as to such rental value. The assignment does not go to the question that the testimony was improperly admitted, because there was no legal proof offered that there was no market value for the hire of such an outfit.

The question, stated in a more concrete form, would be that where no proof can be made of the market value in use of an outfit consisting of teams, wagons, harness, as a whole, in which he was engaged in doing contract work, is it proper to make such proof of the value of the use so as to ascertain the entire value of the whole by proof of separate values for the use of each from time to time during the entire period, when it is shown there is no market value? I believe it may be done in connection with the other proof, or else it would mean to authorize a person to ruthlessly disregard the rights of others and take his property, escape liability, and say, "You cannot be heard to complain since you cannot prove the market value of the entire outfit as such, and there is no other way known to the law for you to do it." We do not think the court erred. In the absence of the proof of market value, we can resort to proof of the value of the use lost to him. Watt v. Nevada Central R. R. Co., 23 Nev. 154, 44 Pac. 423, 46 Pac. 52, 726, 62 Am. St. Rep. 772. See the note for an interesting discussion of the law of damages. It is not a correct rule, in assessing the measure of damages, to confine the jury to the use of work horses, to their value and hire by the day, month, or the year for the long period. The object in view is to compensate for the injury done, and the jury should be allowed to take into consideration the value of the use and hire of the entire outfit, and allow such an amount for actual damages as will compensate the plaintiffs, whether computing it by the rule of interest or that of hire, or value of the use, as may seem to them most adequate to that result. Craddock v. Goodwin, 54 Tex. 588; Hudson v. Wilkinson, 45 Tex. 445; Hull v. Davidson, 6 Tex. Civ. App. 588, 25 S. W. 1048; Hermann v. Allen, 118 S. W. 797; Parlin & Orendorff Co. v. Kittrell, 95 S. W. 705; Reiley v. Hopkins, 50 Tex. Civ.

App. 600, 110 S. W. 780; Waller, Sheriff et al. v. Hail, 46 S. W. 82.

We think a recovery may be had for the loss of the use of specific property, where the reasonable worth of such use may be shown with certainty; such compensation being based upon the rental value, or hire, of the property taken or destroyed, from the time of the taking or the destruction up to the time when, with reasonable diligence, it could have been replaced or restored; whether it was, in fact, restored or replaced, or not. Bennett v. Lockwood, 32 Am. Dec. 532, note; Higgins v. Los Angeles Gas Co., 159 Cal. 651, 115 Pac. 313, 34 L. R. A. (N. S.) 717.

We think, also, as a general rule, the measure of damages for the taking, conversion, loss, or destruction of personal property is its value, or reasonable worth, at the time and the place of its taking or destruction, and ordinarily such value is based upon the "market value," if it has any; otherwise the plaintiff is permitted to recover the value of the property to him, based on his actual money loss. Hillebrant v. Brewer, 6 Tex. 45, 55 Am. Dec. 757; Watt v. Nevada R. R., 23 Nev. 154, 44 Pac. 423, 46 Pac. 52, 726, 62 Am. St. Rep. 772.

The failure to prove market value because there is none will not defeat the right to recover. Its value can be shown by the uses to which it is put or is adapted. Land Mortg. Co. v. Campbell, 98 Tex. 376, 84 S. W. 424; Boyer & Lucas v. St. L., S. F. & T. Ry. Co., 97 Tex. 107, 76 S. W. 441; Jones on Evidence, § 169 (1913 Ed.); Jones on Evidence (2d. Ed.) §§ 363 and 387; Ry. v. Dunman, 85 Tex. 176–181, 19 S. W. 1073. Special attention is called to this last page. Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028. In passing upon the question of damages and considering testimony of witnesses great discretion is lodged with juries. The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937; Hull v. City St. Louis, 138 Mo. 618, 40 S. W. 89, 42 L. R. A. 753. Especial attention is called to the note.

The value in use of an outfit such as presented in this case, under the testimony, is hardly susceptible of proof of its market value, except in the manner adopted, which we believe is sufficient. That our viewpoint may appear clear, we shall quote from appellee, Paul Gallas, himself. He said:

"I know the reasonable value of mules now, such as those, in the condition I saw them—not in San Antonio, I know what they are worth in our country, Wichita Falls. I know what would be the value of the use of those mules up there, well, on contracts. I never hired any teams, but what I heard—it is from $30 to $35 a month for a team of mules and wagon; the man who hired them fed the team. I don't know of any transaction myself by which I would know the value of the use of such mules; just what I hear people say they are

paying for mules what they hired, what they have to pay for mules."

And, further, upon cross-examination, stated:

"Yes; I am suing in this action to recover the value of the use of these mules Mr. Montgomery has unlawfully taken away from me and deprived me of their use. I said these mules were worth, in use to me, $35 per month per team, wagon, and harness—for the whole of that time; no, that is not my testimony. I said that is what they were paying. I said that's what mules were bringing by the month. What was the value of the use to me of such an outfit? Well, I can tell you what I am getting for all I got—these would be worth the same thing. In 1917 there was no railroad work going on—very little any kind of road work; some little work going on; the war stopped most of it. If I had gotten these teams I could have gotten some work if I had gone around for it. * * *"

Here is a man testifying that he has been in the contracting business about 13 or 14 years, using wagons, etc., doing that kind of work all that time, states he knows the value of the use of a team of mules and wagon such as he had used, and then stated their value. We cannot perceive wherein he is disqualified to testify, or that such testimony itself, unobjected to, is not to be considered.

It is to be noticed that appellant did not go on the witness stand. He no doubt could have illuminated the issues of fact very much; but he did not, nor was any other witness placed on the stand by appellant on the point interrogated as to the value of the use or the market value thereof; so appellee's testimony stands uncontradicted and undisputed. Besides, the testimony of Paul Gallas, the appellee, there was Henry Cullam, who testified he was a grading contractor, and had for 15 years been constantly in that business, and in it in 1917, 1918, and 1919, and testified:

"In the conduct of my grade contracting business, I have been hiring and paying for the use of mules, wagons, harness, tents, water wagons, etc., during the entire time I have been conducting such business, about fifteen years, and this has given me a thorough knowledge of the value of the use of such outfits. I know what was the value of the use of such an outfit during the years 1917, 1918, and 1919, commencing June 1, 1917. The value of the use of an outfit described as consisting of 22 mules, averaging about 16 hands high, well built, in good condition, ranging in age from seven to fifteen years, eleven wagons that had been used in doing contracting work in road-making about one year, but in good condition, four tents that had been used for over a year, one water tank that had been used about a year, nine sets of harness that had been used a little over a year, for the period of time beginning on the 1st of June, 1917, and extending down to the present time; yes, the value of the use of such an outfit would be $24,955

for the time mentioned; for one year, the value would be $9,660.00. The value of the use of such an outfit would be $805 per month during said period. * * *"

He also states the depreciation is about 10 per cent. per annum, and for 31 months 26 per cent.

T. A. Griffin also testified:

"My opportunity for acquiring knowledge of the value of the use of contracting outfits consisting of mules, wagons, tents, water wagon, and harness has been the actual hiring and using of such outfits during my experience in the grading business, and I know what was the value of the use of such outfits in the state of Texas during the years 1917, 1918, and 1919, commencing with the 1st day of June, 1917. The value of the use of a contracting outfit consisting of 22 mules, averaging about 16 hands high, well built, in good condition, and ranging in age from 7 to 15 years, 11 wagons that had been used in doing contracting work in road-making about one year but were in good condition, four tents that had been used for over a year, one water tank that had been used for about a year, and nine sets of harness that had been used a little over a year, for the period of time beginning on the 1st day of June, 1917, and extending down to the present time, I know the value of such an outfit for such period; in my opinion, the value would be $23,250 for the entire period. For one year it would be $9,000. It would be $750 per month, in Texas."

He also stated the depreciation for the entire length of time would be 25 per cent.

Whether their testimony placed the value of the use of the property annually instead of monthly does not change the fact that appellee showed a case of damages.

We have no right to invade the province of the jury and examine their method of calculation, in the absence of improper conduct, to see which witnesses they believed and which they disregarded entirely, if there is sufficient evidence to base a verdict upon any theory.

In Hudson v. Wilkinson, supra, no instruction was given on the question involved, and the judgment of the trial court was not reversed on account of the fact that the jury had reached their verdict by multiplying the number of days that the property was used by the value of the use of the property by the day as testified to by the witnesses. There was no such testimony here. The intimation in that and similar cases is clear the judgment would not be reversed merely because the jury had rendered an excessive verdict by making their calculation in this manner. There is nothing there or in any of the decisions that supports the contention that those instructions requested support correct propositions of law. The court could not so far invade the province of the jury as to tell them upon what testimony to base their verdict and what not.

The return and statement of the sheriff

as to value of the property seized in this case was held admissible. There was testimony, besides this, of other witnesses as to value of the "outfit," and the trial court could not instruct them to disregard any of this evidence, nor upon what phase of all the evidence the court permitted to go before them in reaching a verdict. Suppose we eliminate the testimony of any one or any two of the witnesses for the reasons stated, that would not lead us necessarily to reverse this judgment, because the verdict is based upon some calculation of the jury, not to the full extent of the entire proof, nor lead to the deduction that the jury disbelieved any of them. They could, in making up their verdict, consider all the testimony in its various phases, then apply a heavier per cent. of discount for depreciation, add interest, or eliminate items of cost, or any other reasonable deduction less than the full amount claimed and testified about. But because it is greatly less than the proof, and because the jury adopted the lowest figure, is nothing of which the plaintiff can complain, if on the whole case there is proof sufficient to sustain the verdict for a lesser amount. It might require a consideration thereof as to its excess had the verdict reached the full measure of the evidence. There is legal evidence, therefore, in the record to sustain this verdict, whether we only considered that of appellee, or his in connection with the other witnesses. Land Mortgage Co. v. Campbell, 98 Tex. 375, 84 S. W. 424.

It is not so material now whether the charge on malice was a clear enunciation of the law in such cases or not, as the case is reversed, and appellee will have an opportunity to amend his pleadings if supposed necessary; and more definitely submit the issue of malice to the jury. Under the pleadings and evidence it should have been submitted in some form.

Appellee does not point out what portion of the judgment he thinks we should cause him to remit and what part to affirm. There is nothing we can do in the way of remittitur, without appellee had set out the basis of his willingness to surrender any part thereof, naming the sum.

I cannot agree with my Brethren in the disposition they make of this case; therefore enter my dissent and nonconcurrence.