THOMAS F. HUDSON v. S. W. WILKINSON.

1. PAROL EVIDENCE OF TRUST.—This court, by decisions from its very organization, has held that a trust may be engrafted in a written instrument by parol testimony.

2. MORTGAGE—CONDITIONAL SALE.—In determining whether an instrument is intended to operate as a sale or a security, the fact that it is given on account of a pre-existing debt; that the time of payment has been extended; the disparity in the amount of the debt and the value of the property; the relative condition and situation

of the parties and pressure brought to bear to induce its execution, and the identity of consequences of failure in payment of the whole or of a small part of the debt, should be considered, in determining the real purpose of the parties and the true object intended to be accomplished by the contract.

3. SAME—PRACTICE.—The intent of the parties, when there has been evidence of the existence of a trust adduced, is to be ascertained by the jury as a question of fact, not by the court, upon the legal effect of the written contract. The question is, what was the intent of the parties, not what they said.

4. PLEDGE.—A trust deed to personal property, accompanied by possession, may be considered a pledge, which will authorize the recovery of the property from the owner, or any one else taking it with notice, such owner or his assignee having the right to redeem by payment of the debt and costs.

5. DAMAGES FOR USE OF WAGON AND TEAM : *Held*, That to prove the value of the use per day, and compute for a long period, is an improper mode of ascertaining the value of the hire of a wagon and team, in a suit for damage for its conversion.

APPEAL from Burleson. Tried below before the Hon. J. M. Onins.

January 2, 1870, Wilkinson sued Hudson for the conversion of a wagon and two mules, alleged to be worth $200, and their hire, worth three dollars per day.

Hudson pleaded his purchase of the property from one Stewart in good faith, and that plaintiff's claim under the same party for the property, was without consideration—was based on a mortgage invalid in law, in that the property was exempt from forced sale.

On the trial plaintiff read the following instrument:

"STATE OF TEXAS,    }
*County of Burleson.* }

"Know all men by these presents: That I, E. D. Stewart, of the State and county aforesaid, for and in consideration of five dollars, cash in hand to me paid by S. W. Wilkinson, of the State and county aforesaid, the receipt of which is hereby acknowledged, have this day granted, bargained, and sold, and by these presents do grant, bargain, sell, and deliver

unto the said Wilkinson one two-horse wagon and two dark brown mules.    *    *    And I hereby covenant that all of said property is free from any prior liens and fully paid for by me, and that the title I hereby make to Wilkinson is full and complete.

The above and foregoing bill of sale is, however, made in trust for the benefit of R. W. Dean, to secure him in the payment in full of a promissory note this day executed, and delivered to him by me, for $120 in American gold coin, payable to said Dean or bearer, due on the first day of January next, and bearing interest from maturity at the rate of ten per cent. per annum. It is understood and expressly stipulated that the said Wilkinson is to retain possession of said property, and use and enjoy the use of the same until I, the said E. D. Stewart, pay off, satisfy, and discharge the above-described note in full. It is further stipulated, that when said note is discharged, canceled, and given up, the said Wilkinson is to relinquish and deliver possession of all of said property unto me, upon my paying the costs thereof. It is further stipulated, that in case the said Stewart fails or refuses to pay off and discharge said note at maturity, then and in that event the said Wilkinson is to pay off the said note and to retain the absolute and indefeasible title to all of said above-described property.

"In testimony whereof I hereunto set my hand, on this 13th day of October, A. D. 1870.

                    (Signed)              "E. D. STEWART.
"Witness:
    "JNO. W. CARROLL.
    "GEORGE ROWLAND."

Which was duly authenticated for record 14th October, and recorded on the 18th. In connection with the conveyance was read the note described.

J. C. Carroll testified: "I acted for R. W. Dean in closing his account with E. D. Stewart, which resulted in his execution of the trust deed and note in evidence. Stewart owed

Dean about one hundred dollars gold, for which Dean had sued out an attachment, and on 13th October, 1870, I went with the deputy sheriff, George Rowland, to Wilkinson's place, where Stewart was living as a tenant, for the purpose of making a levy of the attachment, unless the matter should be arranged by Stewart.   *   *   Stewart agreed to execute the trust deed and note, and the costs of the attachment were charged to Stewart, and were included in the note for $120 to Dean.   Up to this time, Wilkinson had no connection with the matter.   Stewart was unable to pay the debt in cash, but was satisfied that he could pay it by the first of January, and executed the instrument freely and voluntarily.   I told him that if he did not pay the debt to Dean by January 1, Wilkinson would have to pay it, and would then own the property absolutely, and he signed it with that distinct understanding.   He made figures of his assets and liabilities, and expressed himself as certain of being able to pay Dean's debt before January 1.   I went over the figures with him, and told him he could not pay the debt as stipulated, and that the result must be that Wilkinson would have to pay the debt and retain the property, and he signed it with that distinct understanding.   He insisted that he was to have the use of the wagon and team up to the first of January, and Wilkinson said he would lend him that or another wagon.   He was Wilkinson's tenant, and Wilkinson had an interest in his crop, and the wagon and team were needed to gather the crop and get it to market.

  "Stewart was a poor man, and had no other wagon and team.   I heard that Stewart had another horse, and I had intended, if the debt had not been provided for, to levy on the horse or one of the mules.   I knew the wagon and mules, or one mule and the horse, were exempt from execution. The wagon was out of rapair at the time, and was on the prairie, not in sight, but the mules were.   The wagon was worth about $80 or $85; the mules about $70 each.   They had previously been in Stewart's possession, and I never heard

his title to them questioned.   The use and hire of a wagon and team is reasonably worth from $2.50 to $3 per day. Wilkinson paid for the repairs on the wagon."

Wilkinson, plaintiff, stated about the same facts as to what transpired when the instrument was executed, and added, ".I had no connection with the matter until the instrument was about to be executed.  Both Stewart and I understood its effect to be that if he did not pay the debt to Dean by the first day of January, I should do so, and become the owner of the property.  I accepted the trust deed with this understanding.  I told him I would let him have the use of this wagon or another of mine, and I did let him have mine until this one was repaired.  I paid for the repairs.  It was distinctly understood that I loaned him the property on my own responsibility, and I stated ·to him at the time that if he attempted to take it out of the county, or to dispose of it, I should take it away from him.  I was induced to lend him the wagon and team from the fact that he was a poor man and absolutely needed the property to get out his crop.  I was also interested in the crop, and this was an additional inducement to lend him the wagon.  About Christmas, hearing that Hudson had bought the wagon and team from Stewart, I went to him (Hudson) and told him I had a mortgage and lien upon it.  He answered that he knew all about that, and had seen the instrument.  Afterwards, on the same day, under the advice of an attorney, I formally demanded the property of him in the presence of witnesses, and he refused to deliver it up, saying at the time that he was not after me, but another party, and that I should not lose anything by it.  I had cotton in Dean's hands on the 1st day of January, 1871, and I told him to sell it and apply the proceeds to the payment of the debt, and he expressed himself satisfied with the arrangement.  Afterwards, about January 12, I paid him the gold and took up the note.  Stewart had bought another horse from a negro—my father had a lien on him—

and in November, 1870, Stewart gave up the horse for the debt."

R. W. Dean testified for plaintiff: " On 13th October, 1870, Stewart owed me about $100 gold. I had sued out an attachment against him, and sent Mr. Carroll, with an officer, to collect the debt and costs of attachment, or get the same secured, or to press the attachment. Under the arrangement made by Mr. Carroll, representing me, and Stewart and Wilkinson, I looked to Stewart for the debt up to January 1, and to Wilkinson after that time. Wilkinson had cotton in my hands on 1st January, 1871, and on that day told me to sell it and pay myself. I was satisfied with the privilege, and considered the debt as paid. Afterwards, however, about the 12th January, and before I had sold the cotton, Wilkinson came in and paid me the gold and took up the note. The hire of the wagon and team is reasonably worth from $2.50 to $3 per day."

Defendant Hudson, for himself, testified: "I had bought the wagon and team from Stewart on the 29th December, 1870, and allowed him what we considered its full value, $205 in gold, as a credit on his account with me. I paid him no money. I had previously seen the mortgage, and bought with a full knowledge of its existence. I would be willing to hire out wagons and teams (the hirer furnishing drivers and paying for their feed) at $1 per day all the time, and would be willing to sell all I had and invest in wagons and teams to do it."

It was agreed that Stewart was a married man and citizen of Burleson county.

The court, among other charges, gave the following:

"3. In the absence of proof of the contrary intent of the parties to the instrument read by the plaintiff, the court instructs the jury that its legal effect was to bind Wilkinson to pay the debt to Dean, if Stewart did not pay it by the 1st of January, 1871, and to make Wilkinson, from that time on, the absolute owner of the property.

"4. There is no evidence before you to show that Stewart had any right whatever to the property, unless he had paid Dean's debt by the 1st day of January, 1871."

The jury found for Wilkinson, and the wagon, worth $80, and the mules $70 each, and the hire at $1 per day from January 1, 1871, to the day of trial, December 14, 1872, for which judgment was rendered. Hudson appealed.

*Broaddus, Thomas & Hill,* for appellant, cited, Stephens *v.* Sherrood, 6 Tex., 294; Stampers *v.* Johnson, 3 Tex., 1; Lucketts *v.* Townsend, 3 Tex., 119; Ruffier *v.* Womack, 30 Tex., 339; 1 Hill on Mort., 101; Young *v.* Epperson, 14 Tex., 628; Stewart *v.* Mackey, 16 Tex., 58; Sampson *v.* Keene, 6 Tex., 110; Brewer *v.* Wall, 23 Tex., 588; Story on Sales, secs., 246, 248, 296, 313, 329, 332; 1 Parsons on Con., 440, 449, 450; 2 Greenl., 276; Carter *v.* Carter, 5 Tex., 100; 2 Kent, 381.

*J. D. Thomas,* also for appellant.

*Hancock, West & North,* also for appellant.

*DeWitt C. Booth, Davis & Beall,* and *Sayles & Bassett,* for appellee, cited, 1 Bouv. Ins., sec. 550; Bouv. Dic., MORTGAGE; Coote on Mort., 14, 15; Perry *v.* Meadowcraft, 4 Beav., 187; Conway *v.* Alexander, 7 Cranch, 218; 2 Hill on Mort., 594, 598; Strider *v.* Reed, 2 Gratt., 38; Hickman *v.* Cantrell, 9 Yerg., 172; Forkner *v.* Stuart, 6 Gratt., 197; Chritcher *v.* Walker, 1 Mur., 488; Harrison *v.* Lee, 1 Litt., 191; Moss *v.* Green, 10 Leigh., 251; Murphy *v.* Barefield 27 Ala., 634; Grant *v.* Skinner, 21 Barb., 581; Quirk *v.* Rodman, 5 Duer., 285; Hill on Trustees, 274, 503; McRainey *v.* Johnson, 2 Fla., 520; Gasshill *v.* Isbell, 8 Rich. S. C., 463; Poag *v.* Bell, 8 Leigh, 606; Thompson *v.* Ford, 7 Ired., 420; Schley *v.* Lyon, 6 Ga., 530; Story on Bail., secs. 93, 94, 95; 1 Wash. on Real Property, 2d ed., 531; Sargent *v.* Howe, 21 Ill., 149; Woodruff *v.* Robb, 19 Ohio, 212; Hannah *v.* Carrington, 18

Ark., 85; Ashhurst v. Montour Iron Co., 35 Pa. St., 30; Pettit v. Johnson, 15 Ark., 55; McIntyre v. Agricultural Bank, 1 Freem., ch. 105; Morris v. Way, 19 Ohio, 469; Koch v. Briggs, 14 Cal., 256; Bradley v. Chester Valley R. R. Co., 36 Pa., 141; Sampson v. Patterson, 1 Hare., 533; Reece v. Allen, 5 Gilen, 236; Newman v. Jackson, 12 Wheat., 572; Brisbane v. Stoughton, 17 Ohio, 482; Brown v. Bartee, 10 S. and M., 275; Marvin v. Titsworth, 10 Miss., 320; Wilson v. Russell, 13 Md., 494; Leffler v. Armstrong, 4 Iowa, 492.

MOORE, ASSOCIATE JUSTICE.—It is apparent from the record that the point, upon which this case was supposed to turn by the court, as well as by the counsel for both parties, was whether the conveyance from Stewart so Wilkinson operated as a mortgage or a conditional sale; and evidently, from the instructions given the jury, the court regarded its determination as depending altogether upon the legal construction of the instrument itself, and was therefore to be decided by it and not by the jury.

The plain effect of the instructions given by the court, taken as a whole, is, that the instrument in question was a conditional sale, and that the jury should so regard and treat it, thereby discarding from their consideration in determining upon their verdict the facts and circumstances under which it was made, and tending to develop the object and purpose of its execution, and holding that its character and effect depended altogether upon its mere form and words, instead of the design, which the parties understood and intended it to subserve. This is, unquestionably, in conflict with the long train of decisions of this court from its very organization, holding that a trust may be engrafted on a written instrument by parol testimony, unless it could be said, as clearly it cannot, that there was no testimony of this character before the jury to which they should have given any consideration whatever.

We make no comment upon the facts or the weight which they might have had with the jury. But certainly, in determining whether an instrument is intended to operate as a sale or a security, the fact that it is given on account of a pre-existing debt, that time of payment is extended, the disparity in the amount of the debt and the value of the property, the relative condition and situation of the parties, and pressure brought to bear to induce its execution, and although the debtor might have succeeded in paying off almost the entire debt before the time fixed for the default, yet the consequences would be the same as if he had paid no part of it, should be considered in determining the real purpose of the parties and the true object intended to be accomplished by it.

As was said in the case of Ruffier *v.* Womack, 30 Tex., 332, " the circumstances from which such contracts have their origin and the object generally intended to be obtained by at least one of the parties being frequently so nearly similar, it is often a matter of considerable embarrassment to say to which of these different classes of contracts a particular transaction properly belongs. Nor is it material what the papers themselves may say on the subject. The question is, what in fact was the contract and agreement of the parties? If by it there was a continuing obligation against the appellees for the debt, the transaction must be declared a mortgage, although it was expressly stated in the deeds that the debt was fully satisfied, and that it was expressly understood and agreed that the contract was intended as a conditional sale, and not a mortgage; for, whether it is the one or the other, depends upon the construction placed by the law upon the real agreement between the parties, and not on what they have said about it."

As the case must be reversed, it is proper for us to say, in view of another trial, that we do not concur in the conclusion which, as we have said, seems to have been taken for granted by the parties, as well as the court, on the former

trial, that, unless the conveyance from Stewart was a conditional sale of the property to Wilkinson, he could not maintain an action for its recovery; for, although this may not have been its legal effect, we think, it may be held to be a pledge, accompanied with possession, vesting a qualified property in the wagon and mules in Wilkinson, by virtue of which he could maintain an action for their recovery against the real owner wrongfully detaining them, against his consent or against any one coming into possession from the owner with notice. But, in that case, the party making such pledge, or any one he might authorize to do so, could redeem the pledge at any time by tendering the debt and cost and damages incurred by his previous wrongful detention of the property.

We may also remark that if Wilkinson had become the absolute owner of the wagon and mules by payment of Stewart's note to Dean, although he would have been entitled to recover for their hire, it was not proper to estimate the hire by proof of the value of their hire by the day. Such proof furnishes no reasonable criterion for an estimate for the length of time the jury were called upon to assess him. The result attained from such evidence glaringly exhibits its impropriety. It would have been only an exaggeration in degree, but not more objectionable in principle, if the hire by the hour had been proved, and the aggregate amount fixed, multiplying this amount by the number of hours the wagon and mules had been detained.

Appellant, however, made no objection to the character of evidence, and the verdict is even more moderate than it might have been on his own testimony; therefore, although it is evidently erroneous, and was clearly calculated to induce an excessive verdict, it can hardly be said to be an error for which he could ask a reversal of the judgment, if in all other respects it was free from objection.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.