Yolanda LUNA, Petitioner,

v.

**NORTH STAR DODGE SALES, INC., Respondent.**

No. C–2325.

Supreme Court of Texas.

March 14, 1984.

Rehearing Denied April 11, 1984.

Pat Maloney, Bayne, Snell & Krause, Barry Snell, San Antonio, for petitioner.

Adams & Flake, on appeal only, Harry B. Adams and Larry D. Brockman, Universal City, for respondent.

McGEE, Justice.

This is a deceptive trade practice case arising from representations made to plaintiff Luna in connection with the sale of a car. The jury awarded $66,600.00 in damages to Luna. The trial court, after remittitur, rendered judgment for $55,400.00 [1] against defendant North Star Dodge. The court of appeals affirmed the $3,200 award for monies Luna expended, the $2,000 award for twice the first $1,000 of actual damages, $6,600 of the $37,800 for additional damages and the $2,000 statutory violation. The court of appeals reversed and rendered that portion of the trial court's judgment which awarded $5,200 for mental anguish damages, $5,200 for loss of use of the automobile and $31,200 of the $37,800 of additional damages. 653 S.W.2d 892. We affirm that portion of the court of appeals judgment that affirmed the trial court's $3,200 award for monies Luna expended, the $2,000 award for twice the first $1,000 of actual damages, the $6,600 of additional damages and the $2,000 statuto-ry violation. We reverse the court of appeals judgment concerning the mental anguish, loss of use and the $31,200 of additional damages and remand to the court of appeals.

In March 1980 Luna sought to purchase a 1980 Dodge Omni from North Star Dodge. A 30-day/1,000 mile "money back guarantee" was offered to new car purchasers. If a purchaser was not satisfied with the car, then the purchase price would be refunded if the car was returned prior to the expiration of 30 days from the purchase date or before the 1000-mile limitation occurred. Luna took delivery of the car and while driving it home noticed a constant vibration and rattling with the steering wheel.

Two days later Luna took the car back to North Star Dodge and asked salesman Lewis to refund her purchase money. North Star Dodge never told Luna they would not refund the purchase money, nor did North Star Dodge ever say they would. Luna claimed North Star Dodge told her the refund decision was up to someone who was not available at that time. North Star Dodge offered to fix the car. Luna claimed it was never fixed. Luna returned to North Star Dodge several times with the car. Luna testified she requested the purchase money back each time she brought the car back. North Star Dodge claimed they did not know of Luna's requests. Luna felt she had no choice but to let North Star Dodge attempt to repair the car because she was unable to obtain the purchase money refund she requested. Luna thought that if North Star Dodge did not fix the car, then she would still get her purchase money back.

Eventually, Luna just left the car at North Star Dodge where it remained at the time of the trial. North Star Dodge informed Luna that the car had approximate-

| 1. | | (a) | actual damages: | |
|---|---|---|---|---|
| | | | (1) cash expended, trade-in, monthly payments | $ 3,200.00 |
| | | | (2) loss of use of automobile | 5,200.00 |
| | | | (3) mental anguish | 5,200.00 |
| | | (b) | twice the first $1,000.00 of actual damages: | 2,000.00 |
| | | (c) | additional damages: | 37,800.00 |
| | | (d) | statutory penalty under article 5069–8.01(b), Tex. Rev. Civ. Stat. Ann. (Supp. 1982–1983): | 2,000.00 |
| | | | Judgment Total: | $55,400.00 |

ly 1500 miles on it and, therefore, was not eligible for a purchase money refund. Luna continued to make monthly payments on the car for 15 months.

Luna brought suit and alleged violations of the Texas Deceptive Trade Practices and Consumer Protection Act (D.T.P.A.), Tex. Bus. & Com.Code Ann. §§ 17.41–17.63 (Vernon Supp.1982–1983), the Texas Consumer Credit Code, Tex.Rev.Civ.Stat.Ann. arts. 5069–7.01—5069–7.10 (Vernon Supp. 1982–1983), the Truth-In-Lending Act, 15 U.S.C. § 1601 *et seq.* (1982), and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.1 *et seq.* (1983). Only the D.T.P.A. violations are on appeal.

The jury found that: Luna requested North Star Dodge to return the purchase price; North Star Dodge failed to refund Luna's purchase price; such failure was done knowingly; North Star Dodge committed an unconscionable action or course of action against Luna; such unconscionable action was committed knowingly; North Star's failure to refund, or unconscionable actions were the producing cause of Luna's damages; and Luna was entitled to $3,200 for monies paid by Luna (consisting of cash, trade-in and monthly payments), $8,000 (reduced to $5,200 by remittitur) for loss of use of the car from April 11, 1980 to the present, $5,200 for mental anguish and $46,200 (reduced to $37,800 by remittitur) for additional damages (an amount not over three times any portion of actual damages which exceed $1,000). The court of appeals set aside the awards for mental anguish, loss of use and the corresponding treble damages.

## I. Mental Anguish

Luna contends that the court of appeals erred in holding there was no evidence to support the finding of damages for mental anguish. We agree, and hold that there was some evidence to support that finding.

■ Mental anguish damages are recoverable when there is proof of a willful tort, willful and wanton disregard, or gross negligence. *Farmers & Merchants State Bank v. Ferguson*, 617 S.W.2d 918 (Tex.

1981); *Duncan v. Luke Johnson Ford, Inc.*, 603 S.W.2d 777 (Tex.1980).

The court of appeals held there was no allegation or proof of "willfulness" nor any evidence to show North Star Dodge's refusal to refund the purchase price was the direct cause in fact of Luna's symptoms. The court of appeals was incorrect when it stated that because treble damages were allowed in *Duncan* and *Brown v. American Transfer & Storage Company*, 601 S.W.2d 931 (Tex.1980), this indicated a finding of "knowingly" pursuant to § 17.-50(b)(1). The facts in both *Duncan* and *Brown* were controlled by the original 1973 version of § 17.50(b)(1) which had no "knowingly" requirement to obtain treble damages. Ch. 143, § 17.50(b)(1), 1973 Tex. Gen. & Spec.Laws 326, 327, *amended* Ch. 603, § 17.50(b)(1), 1979 Tex.Gen. & Spec. Laws 1329, 1330. There was no finding of "knowingly" in *Duncan* or *Brown*, nor was it required in order to collect treble damages. Hence, the recovery of treble damages in *Duncan* and *Brown* did not indicate a finding of "knowingly."

■ We hold that the jury's finding, that the unconscionable actions of North Star Dodge were committed *"knowingly,"* was sufficient to support recovery of mental anguish damages. The trial court's charge defined "knowingly" to mean "actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim of actual awareness of an act or practice constituting a breach of warranty, but actual awareness may be inferred when objective manifestations indicate that a person acted with actual awareness." This definition substantially follows the statutory "knowingly" definition in § 17.45(9).

In *Duncan* and *Farmers & Merchants State Bank*, we stated we would allow recovery of damages for mental anguish when there was proof that the wrongful act was committed in a grossly negligent manner. Gross negligence means that there was an "entire want of care which would raise the belief that the act or omis-

sion complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Burk Royalty Company v. Walls,* 616 S.W.2d 911, 920 (Tex.1981).

■ If a person commits a wrongful act with actual awareness of the falsity, deception or unfairness of the act, then this is a more culpable mental state than one who is grossly negligent. We are not attempting to equate the terms gross negligence, "knowingly," "willful" and intentional. These terms lie on a continuum with gross negligence being the lowest mental state and intentional being the highest. If grossly negligent conduct is sufficient to allow a plaintiff to recover mental anguish damages, then "knowing" conduct is also sufficient. In the present case, the jury found North Star Dodge's failure to return the purchase price and the commission of an unconscionable course of action were committed "knowingly" and such actions were the producing cause of Luna's damages. The court of appeals found there was no evidence showing the refusal to refund Luna's purchase price was the producing cause of her symptoms. We hold there is some evidence of producing cause. The court of appeals did not address North Star Dodge's points concerning the excessiveness of damages for mental anguish and the factual sufficiency of the evidence to support the mental anguish award. The court of appeals also did not address North Star Dodge's point contending that there is insufficient evidence that the unconscionable course of action was the producing cause of Luna's mental anguish. Therefore, we must reverse the judgment and remand the cause to the court of appeals to address these points of error. *Montfort v. Jeter,* 567 S.W.2d 498 (Tex.1978).

## II. Loss of Use

Luna contends that the court of appeals erred in holding there was no evidence to support the finding awarding Luna damages for loss of use of the automobile. We agree, and hold that there was some evidence to support that finding.

Luna sought to recover the reasonable rental value for her 1980 Dodge Omni for loss of its use from the time the car was left at North Star Dodge until the trial date. Luna testified that she thought the reasonable rental value for her car was approximately $100.00 per week. Luna was unable to afford to rent a replacement car. A man in the auto leasing and rental business testified the reasonable rental value for Luna's car in April 1980 was $108.00 per week plus approximately $0.18 per mile. The jury awarded Luna $8,000 for loss of use of the car. Luna remitted $2,800 of that actual damage award (leaving $5,200) and $8,400 of the additional damages because the trial court felt the loss of use awarded was excessive.

The actual damages of $5,200 and additional damages of $15,600 for loss of use were set aside by the court of appeals. Since Luna did not prove she had actually incurred some monetary loss by renting an automobile or expending monies for alternative transportation, the court of appeals held that Luna could not collect damages for loss of use. This was error. The court of appeals relied on *American Standard County Mutual Insurance Co. v. Barbee,* 262 S.W.2d 122 (Tex.Civ.App.—Fort Worth 1953, no writ), and *Finley v. Beck,* 16 S.W.2d 908 (Tex.Civ.App.—Fort Worth 1929, no writ). Both cases held that since the plaintiff had not actually incurred any out-of-pocket expenses by reason of being deprived of the automobile, that damages for loss of use of the automobile could not be collected. We expressly disapprove of this holding in those cases.

■ We hold that in order to prove loss of use of an automobile, the plaintiff need not rent a replacement automobile or show any amounts actually expended for alternative transportation. We agree with the Washington Supreme Court in *Holmes v. Raffo,* 60 Wash.2d 421, 374 P.2d 536 (1962):

If we were to hold that a plaintiff who has lost the use of his pleasure automobile ... cannot be compensated because he has not hired a substitute automobile, we would be placing upon recovery a

condition of financial ability to hire another automobile to take the place of the injured automobile. The law cannot condone such a condition. He would be denied compensation for his inconvenience resulting from the defendant's wrongful act.

*Id.* at 542. *Accord, Burgess Construction Company v. Hancock,* 514 P.2d 236, 238 (Alaska 1973); *Malinson v. Black,* 83 Cal. App.2d 375, 188 P.2d 788, 791–792 (1948); *Meakin v. Dreier,* 209 So.2d 252, 254–255 (Fla.Dist.Ct.App.1968); *New York Central Railroad Company v. Churchill,* 140 Ind. App. 426, 218 N.E.2d 372, 377 (1966); *Chriss v. Manchester Insurance & Indemnity Company,* 308 So.2d 803, 806 (La.Ct. App.1975); *National Dairy Products Corp. v. Jumper,* 241 Miss. 339, 130 So.2d 922, 923 (1961); and *Naughton Mulgrew Motor Car Company v. Westchester Fish Company,* 105 Misc. 595, 173 N.Y.S. 437, 438 (N.Y.Sup.Ct.1918).

■ To prove up loss of use, the reasonable rental value of a substitute automobile is sufficient evidence to support an award of actual damages. The period of compensatory loss of use will be the amount of time the plaintiff was deprived of the loss of use of the automobile. The evidence put before the jury may be a reasonable rental value by the day, week, or month. The court of appeals held that when the loss of use is over an extended period of time, the proper method of proving reasonable rental value is not by the day, week or month, but by a sum certain covering the entire period. This rule began in *Hudson v. Wilkinson,* 45 Tex. 444 (1876), when the court stated that proof of the rental value per-day or per-hour for the entire compensatory period was not proper. "The result attained from such evidence glaringly exhibits its impropriety." *Id.* at 453. This rule was criticized in *Craddock v. Goodwin,* 54 Tex. 578 (1881), where the court stated:

It is a rule which in many cases would do simple justice, but in others it might be pushed to the verge of absurdity. It is not perhaps possible to lay down a rigid and unbending rule, applicable to all cases. It must of necessity ... vary with the character of the property, and somewhat with the peculiar circumstances of the case.

*The thing to be kept in view is that the party shall be compensated for the injury done.* (emphasis added).

We believe the *Craddock* court was correct in its criticism and logic. In this case Luna has suffered compensable inconvenience for loss of use of her car. The rental value, whether by the day, week, or month, is indicative of the loss suffered.

The court of appeals did not address North Star Dodge's contentions that the loss of use award was excessive and was not supported by factually sufficient evidence. Therefore, we must reverse the judgment and remand the cause to the court of appeals to address these points.

## III. Improper Questioning of a Witness

On cross-examination, the following exchange took place between Mr. Snell, Luna's counsel, and Patricia Crawford, finance manager for North Star Dodge:

Q (by Mr. Snell): And North Star Dodge is just about to go down the tubes, isn't it?

A (by Crawford): No, that is not true.
      MR. YEDOR (North Star Dodge's counsel): Objection, Your Honor, that is highly improper. It surprises me that Mr. Snell would ask a question like that.
      THE COURT: You may ask another question but not that one.

Q If Mr. Yedor has told me they are about to file bankruptcy, is that right or not, if he has told me they are on the verge of bankruptcy?
      MR. YEDOR: Judge, I will ask that the jury step out at this time.

Mr. Yedor moved for a mistrial. The trial court decided to hold the motion in abeyance. A lunch break was taken. Up to this point Mr. Yedor had not requested a curative instruction. After the lunch break, Mr. Yedor requested a curative instruction. After the close of plaintiff's and defendant's cases, the trial court overruled

the motion for mistrial and gave the jury the following instruction: "Ladies and gentlemen of the jury, the Court has ruled that any mention of pending bankruptcy by North Star Dodge is inadmissible and should not be considered by you for any purpose. You are instructed to disregard such matter or matters in all of your deliberations." This was proper.

■ North Star Dodge complains that it was reversible error for the trial court not to promptly instruct the jury to disregard the financial condition statements immediately after the statements were made. This argument is without merit. Mr. Yedor never requested a curative instruction immediately after the statements were made. Mr. Yedor waited until after a lunch break to request an instruction. If Mr. Yedor wanted a curative instruction after the trial court impliedly sustained his first objection, then Mr. Yedor should have requested one at that time.

North Star Dodge further asserts that statements made by Mr. Snell concerning the financial condition and possible bankruptcy of North Star Dodge were incurable, and therefore, it was reversible error not to grant the motion for mistrial. In *Standard Fire Insurance Company v. Reese*, 584 S.W.2d 835 (Tex.1979), we set out the factors necessary to show reversible error. *Reese* applies to all cases in which alleged improper jury argument or improper questioning of a witness takes place.

■ A reversal must come from an evaluation of the whole case. *Reese*, 584 S.W.2d at 840. From voir dire until the closing argument only two alleged improper questions were asked. The financial condition of North Star Dodge did not relate to a material finding in this case. The questioning on the subject of financial condition was not repeated. The trial court instructed the jury to disregard the statements for all purposes. If there was any error involved, it was harmless. Tex.R. Civ.P. 503.

That portion of the court of appeals judgment that affirmed the trial court's $3,200 award for monies Luna expended, the $2,000 award for twice the first $1,000 of actual damages, the $6,600 of additional damages and the $2,000 statutory violation is affirmed. We reverse that portion of the court of appeals judgment concerning the mental anguish, loss of use, and $31,200 of additional damages awards and remand this cause to the court of appeals to address the excessiveness of the damages and factual sufficiency of the evidence of the loss of use and mental anguish awards and the producing cause finding as it concerns the mental anguish damages.