Patricia SEALE, Appellant

v.

AMERICAN MOTORIST INSURANCE COMPANY, Kathleen Blanchard and Kelly Donalson, Appellees.

No. 09–89–100 CV.

Court of Appeals of Texas, Beaumont.

Oct. 18, 1990.

Rehearing Denied Nov. 13, 1990.

Timothy W. Ferguson, Umphrey, Eddins & Carver, Beaumont, for appellant.

Hollis Horton, Orgain, Bell & Tucker, Beaumont, for appellees.

## OPINION

BROOKSHIRE, Justice.

Appeal from the granting of a summary judgment. The basic question involves the administration of medical expenses. TEX. REV.CIV.STAT.ANN. Art. 8306, sec. 6 (Vernon 1967) provides, in relevant part, that medical aid, hospital services, chiropractic services and medicines, as provided for in section 7 (Vernon 1967, Vernon Supp. 1990), shall be supplied as and when needed and according to the terms and provisions of said section 7. Section 7, entitled "Medical Services", spells out, in relevant part, that the employee shall have the sole right to select or choose a person or facility to furnish medical aid and other services and the association shall be obligated for the same. Medical aid, other services and medicines shall be furnished as may be reasonably required at the time of the injury and at any time thereafter to cure and relieve the effects naturally resulting from the

injury and such treatments shall include those necessary for physical rehabilitation, including prosthetic appliances as may be necessary to reasonably restore the employee to his normal level of physical activity or as necessary to give reasonable relief from pain.

A main thrust of Appellant is that Dr. Cloud, a specialist in orthopedic medicine, in Orange, had prescribed bariatric treatment for an overweight condition. He had prescribed the treatment at the time the Appellant's prior, related compensation claim was pending. It appears, in the record, that she attained a recovery in that prior litigation.

The basis for this present litigation and pending appeal is an on-the-job injury suffered by Patricia Seale on or about June 3, 1986. The on-the-job injury resulted in the filing of a claim for worker's compensation. Thereafter, the carrier employed and agreed to pay Dr. James P. Cloud to examine and to treat Patricia Seale for her back injuries which had been previously reported. The claim that was filed eventually resulted in district court litigation but, prior to the trial on the merits, Dr. Cloud had recommended that the Appellant herein be directed for medical treatment to a bariatric clinic for a weight reduction program as a definite part of her treatment. There were several requests for such bariatric clinic treatments and weight reduction treatments made prior to the district court trial. The carrier denied these requests. Therefore, there was no authorization or payment forthcoming for such treatment.

Appellant Seale proceeded to trial on a worker's compensation cause of action. The trial commenced on or about January 25, 1988. The jury found that Appellant had suffered an injury in the course and scope of her employment. The verdict and judgment favored Ms. Seale with an award in excess of $9,000.

Because of the trial and the judgment involved, Ms. Seale became entitled to lifetime medical benefits and medical aid for problems which resulted from her on-the-job injury of June 3, 1986.

Subsequent to this underlying and previous, final judgment, Dr. Cloud again requested that the carrier authorize and pay for bariatric treatment. However, at this stage of the ongoing problem, the carrier had, and has, repeatedly and repetitiously refused such authorization and payment. These series of events required that the Appellant file a second lawsuit which has, in turn, resulted in this present appeal at bar.

Patricia Seale contends that the insurance company simply had no reasonable basis for denying these medical benefits and medical aids and knew or, in the exercise of ordinary care, should have known that it, the carrier, had no reasonable basis for denying the recommendations made by the treating physicians. This lack of reasonable basis is especially pertinent to the diagnosis, orders, requests and reports from Dr. Cloud. Several claims have been made upon the insurance company to authorize bariatric treatment for the Appellant. These are post-judgment claims. The fact that these claims have been made is not disputed. Furthermore, it is not disputed that the insurance company has refused to authorize such treatment.

█ A basic position taken by the carrier is that since Patricia Seale has not incurred any out-of-pocket money medical expenses, then there can be no liability. Appellant contends, however, that she should be entitled and is actually entitled to be compensated for reasonable damages due to the failure of the carrier to live up to its contractual obligations and responsibilities and its common law duties to Patricia Seale.

Appellant Seale argues that it is against public policy, as well as decisional precedent, to require her, as an on-the-job injured worker, to incur out-of-pocket, additional, financial obligations and liabilities when it has been virtually (if not actually) predetermined that the carrier will not reimburse either Seale or any treating physician or hospital and that no authorization for treatment will be forthcoming.

It is, of course, important to bear in mind that this is an appeal from the granting of a motion for summary judgment. The

summary judgment practice is basically designed to facilitate the disposition of unmeritorious claims where there exists no genuine issue of any material fact. TEX. R.CIV.P. 166a. The summary judgment practice is not intended to deprive claimants of their right to obtain a full, conventional trial on the merits, if genuine issues of material fact are present.

At the appellate level, a Court of Appeals is required to consider the summary judgment proof in a light that is most favorable to the non-movant or the party against whom the summary judgment has been adversely granted. Pursuant to accepted standards and criteria of review, a Court of Appeals is authorized to affirm the judgment below if, but only if, there is no genuine issue of any material fact. Also, a Court of Appeals must conclude that the successful moving party is actually entitled to the judgment as a matter of law. *Castleberry v. Goolsby Bldg. Corp.*, 608 S.W.2d 763 (Tex.Civ.App.—Corpus Christi 1980) *aff'd* 617 S.W.2d 665 (Tex.1981). It follows then, of course, that the burden of proof at a trial on the merits is not applicable at a hearing on the motion for summary judgment. *Missouri, etc. v. City of Dallas*, 623 S.W.2d 296, 298 (Tex.1981).

The moving, successful party below must prove all elements of its affirmative defense as a matter of law. *Odeneal v. Van Horn*, 678 S.W.2d 941 (Tex.1984). All conflict and adverse inferences from the evidence are to be resolved against the prevailing movant. *See Traylor v. Unitedbank Orange*, 675 S.W.2d 802 (Tex.App.—Beaumont 1984, writ ref'd n.r.e.). Furthermore, and importantly, the defending party, the moving party here, has the burden to demonstrate that the claimant cannot succeed under any pleaded theory. *Delgado v. Burns*, 656 S.W.2d 428 (Tex.1983).

Appellee has endeavored to impose a burden of substantial financial ability upon the injured worker to pay for certain medical aid and services. This burden is sought to be imposed on the injured worker even for medical aid to alleviate pain. We conclude that this contention lacks merit. In fact, this contention has been rejected in *Luna*

*v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115 (Tex.1984). The Supreme Court, there, held that it was not a prerequisite for a plaintiff to actually incur any out-of-pocket expenses before being allowed to collect damages. *Id.* The defendant in *Luna, supra,* had argued that the plaintiff could not collect monetary damages for a replacement automobile since the plaintiff had not actually incurred monetary loss by renting a replacement vehicle.

It is important and crucial to note, we think, that TEX.REV.CIV.STAT.ANN. Art. 8306, sec. 6 (Vernon 1967) provides that medical aid, hospital services, chiropractic services and medicines shall be supplied as and when needed in accordance with the terms and provisions of section 7.

TEX.REV.CIV.STAT.ANN. Art. 8306, sec. 7 (Vernon Supp.1990) provides that the employee *shall have the sole right to select the persons or facilities to furnish medical aid, chiropractic services, hospital services and nursing and the association shall be obligated for the same, all as may be reasonably required at the time of the injury and at any time thereafter to cure and obtain relief from the effects naturally resulting from the injury.* Section 7 also provides that such treatments and facilities shall include procedures, medicines and medical aid necessary to physical rehabilitation and as may be necessary to give reasonable relief from pain.

■ Since a judgment has been entered in the 172nd District Court at a prior time, it is appropriate for the Plaintiff to bring her suit in the district court. *See Lowe v. St. Paul Mercury Ins. Co.*, 730 S.W.2d 458 (Tex.App.—Beaumont 1987, writ ref'd). There is no serious contention made here that any charges or costs for the medical aid or other services would be unfair or would be unreasonable.

It must be borne in mind and it is of crucial importance that the underlying and undergirding final judgment in the prior case was entered after a trial on the merits. The jury returned its verdict affirmatively finding that Seale had received an injury on or about June 3, 1986, and that

she had suffered and sustained such injury in the course and scope of her employment and that her injury was a producing cause of total incapacity beginning June 3, 1986, and extending and ending on April 30, 1987. The judgment awarded $713 over and above the $9,021 previously paid. That jury-tried proceeding had a judgment signed and entered on January 28, 1988. Later, in the middle of October, 1988, a deposition was taken of Patricia Seale.

Under questioning by the attorney of record for the carrier, Ms. Seale was asked:

Q You understand that for any treatment that's related to this accident of June 3rd of 1986, the Workers' Compensation carrier would be obligated to pay for it? You understand that?

A Yes.

She testified that Dr. Cloud had been engaged to treat her by the B.F. Shaw Company and that Dr. Cloud was the company doctor for B.F. Shaw. She testified that she thought she was not getting relief and asked to go to someone else but she was advised by Dr. Cloud's nurse that she could not go to anyone else. She also testified that Dr. Cloud was not a weight-loss treatment physician. Seale's testimony related her bariatric problem back to her June 3, 1986, injury.

 We decide that the burden would be upon the carrier to show that there was no relationship between the needed bariatric treatment and the industrial injury of June 3, 1986. This, we conclude, the carrier has failed to do. Hence, the carrier is not entitled to a summary judgment as a matter of law. TEX.R.CIV.P. 166a(c). Rule 166a(c), in relevant part, reads as follows:

The judgment sought shall be rendered forthwith if ... at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact *and the moving party is entitled to judgment as a matter of law....* (Emphasis added)

The carrier argues and attempts to place the burden of the payment of out-of-pocket medical expenses and the burden of the financial ability to pay upon the injured worker before a denial of medical services can become actionable. This contention is not sustainable. A parallel case is *Luna, supra.* In *Luna,* the Texas Supreme Court cited, with approval, an opinion of the Washington State Supreme Court in the case of *Holmes v. Raffo,* 60 Wash.2d 421, 374 P.2d 536, 542 (1962):

If we were to hold that a plaintiff who has lost the use of his pleasure atuomobile [sic] ... cannot be compensated because he has not hired a substitute automobile, we would be placing upon recovery a condition of financial ability to hire another automobile to take the place of the injured automobile. The law cannot condone such a condition. He would be denied compensation for his inconvenience resulting from the defendant's wrongful act.

Whether or not Ms. Seale has her day in court should not rise or fall upon her financial ability, or her inability, to incur and pay for the cost of the medical services, aids and the bariatric treatment. *See and compare Unitrust, Inc. v. Jet Fleet Corp.,* 673 S.W.2d 619 (Tex.App.—Dallas 1984, no writ).

A report from Dr. Cloud spelled out that since the patient had been off the medications that he had prescribed she had had an increased amount of back pain and difficulty with sleeping. She also had experienced muscle spasms in her back. On a later visit, the report showed that Ms. Seale reported to her doctor that her condition had remained essentially the same.

In a previous report, which was a business record of Dr. Cloud, the record reflects that Ms. Seale had been followed on an out-patient basis and that she had been treated with medications and physical therapy at the Orange Memorial Hospital and that Ms. Seale continued to have pain in her back area at the lumbo-sacral joint.

Patricia Seale was seen, also, by Dr. Ramos and Dr. Rafes, of Beaumont, and a MRI (magnetic resonance imaging) of her lumbar spine was carried out. This test

revealed mild ventral bulges upon the subarachnoid space at L4–5 and L5–S1 in the midline which, Dr. Cloud stated, certainly is compatible with the patient's symptoms. It was Dr. Cloud's opinion that an important part of Ms. Seale's difficulties was an increase in weight during the several months prior to February 26, 1987. In that same letter of February 26, 1987, Dr. Cloud specifically asked for authorization from the carrier, through the Kemper Insurance Company of Houston, Texas, to refer Ms. Seale to a bariatric clinic for weight reduction as a part of her treatment regimen. It is reflected throughout a number of reports from Dr. Cloud that Ms. Seale had consistently complained of pain in her back area which was aggravated by movement.

The Appellant takes the unequivocal position, in her brief, that she is entitled to lifetime medical aid, which is not challenged in the brief of the Appellee. TEX. REV.CIV.STAT.ANN. Art. 8306, sec. 7 (Vernon Supp.1990); TEX.R.APP.P. 74(f).

The carrier, as a matter of law, has failed to conclusively prove that Ms. Seale was not entitled to the benefits given to her under Art. 8306, sec. 7 (Vernon Supp. 1990). Admittedly, this said article also addresses the functions of the Industrial Accident Board, but the carrier has not shown that Ms. Seale can comply as a practical matter and that she can furnish to the Board the material within the purview of Art. 8306, sec. 7. In fact, the carrier has failed to do this and, on this basis, is not entitled to the granting of the summary judgment. TEX.R.CIV.P. 166a(c).

From the summary judgment evidence and record before us, Patricia Seale has raised a genuine issue of material fact that she is entitled to these bariatric services, medical aids and medicines because of the present effects resulting from her compensable injury upon which she won a substantial judgment. This was not her burden to raise these material facts but she did so. Hence, on this ground, the trial court fell into error in granting the motion for summary judgment in favor of the carrier.

A genuine issue of material fact is that the carrier employed and agreed to pay Dr.

Cloud to examine and to treat Ms. Seale for her injuries. Her injuries had been reported. The business records of Dr. Cloud reflected that he had seen and treated Ms. Seale repeatedly. There were about twenty-five office visits and nine payments made on Dr. Cloud's bill by the company. The doctor's statements were sent to the Kemper Insurance Company to the attention of Kelly Donalson. Upon the initial examination Ms. Seale weighed about 275 pounds. On February 26, 1987, Dr. Cloud tendered a medical report to the Kemper Insurance Company; attention, Kelly Donalson, in reference to Patricia Seale, whose employer was B. F. Shaw. The date of injury was June 3, 1986. A relevant paragraph of that medical report states:

> It is my opinion that an important part of Ms. Seale's present difficulty is the increase in weight during the past several months. The patient stated that when she was injured she weighed approximately 275 lbs and now weighs approximately 345 lbs.

> By this letter I would like to have your authorization to refer Ms. Seale to a bariatric clinic for weight reduction as part of her treatment regime. I will await your reply.

Another medical report was tendered to the insurance company; attention, Kelly Donalson, in reference to Patricia A. Seale, date of injury 6–3–86. Portions of that report read:

> The patient was seen in my office on March 18, 1987 at which time she stated that since she had been off of the medications that she had an increased amount of back pain and difficulty with sleeping and also muscle spasms of the back ... The patient returned to my office on April 2, 1987. She stated that her condition was essentially the same. She then had an appointment to see Dr. Martin Haig, orthopedic surgeon of Port Arthur, Texas for a consultation which was ordered by the accident board.

> The patient has subsequently seen Dr. Haig. I feel that, as Dr. Haig does, that this patient's problem now is marked

obesity and inability to do ordinary physical work because of the obesity....

There is some evidence that because of her injury and the resulting inactivity therefrom that her weight had increased considerably and that her increased obesity resulted in disability and pain, which persists. We perceive that the carrier failed to make a reasonable investigation following the several medical opinions and written reports of its authorized orthopedic specialist. Indeed, a second orthopedic surgeon, Dr. Haig of Port Arthur, was in agreement with Dr. Cloud of Orange. It is interesting and significant to note that Dr. Cloud affirmatively requested authorization to send Ms. Seale to a bariatric clinic for proper treatment of her obese condition and for the purpose of weight reduction.

The successful movant below took the position that no medical expenses which had not been paid had been actually incurred by Ms. Seale. The movant's basic position was that the dispute was solely whether the carrier was required to pre-authorize payment for a treatment modality, being bariatric treatment. Again, the position of the carrier was that Ms. Seale had not incurred any medical expenses and the carrier had not actually refused to pay any incurred medical expenses. We fail to find in the summary judgment proof any effort made by the carrier to investigate the request for the authorization of bariatric services as asked for by Dr. Cloud, the treating physician. The carrier, in referring to its obligation to pay medical expenses, cites TEX.REV.CIV.STAT.ANN. art. 8306, secs. 6 (Vernon 1967) and 7 (Vernon Supp.1990).

The carrier also cites TEX.REV.CIV. STAT.ANN. art. 8307, sec. 12b. However, section 12b relates to compromise settlement agreements and agreed judgments. Section 12b is not applicable to this record. Ms. Seale obtained a final judgment after a contested trial.

The reports of Dr. Cloud raise an issue that Ms. Seale's weight gain was caused as a result of the compensable injury. The fact that Ms. Seale had not proven the amount of charges necessary for such bariatric treatment does not justify, in our opinion, under current decisional law, the carrier's refusal to authorize payment for such charges and expenses as would be reasonable and necessary to treat her weight gain resulting from her injury.

Bearing in mind that this is an appeal from the granting of a summary judgment, we conclude that the carrier breached its duty to reasonably investigate the request for authorization because, for summary judgment purposes, the carrier had no reasonable basis to deny such authorization *without any investigation or to delay it until Ms. Seale could obtain a physician who would provide the services without the carrier's authorization.* The carrier failed to justify its actions. It had the duty and burden to do so as the successful movant below. It is interesting and crucial to this appeal to point out that the carrier did not move for a summary judgment on the ground *that all or part of Ms. Seale's remarkable gain in weight was not a result of the compensable injury.*

Again, we do not find summary judgment evidence that the carrier ever conducted any investigation relative to the authorization for bariatric treatment. The carrier, in effect, requests this Court to hold that its duty to deal in good faith with the injured worker, who had successfully tried her claim, does not exist prior to the time that the disabled worker actually obtained the necessary bariatric services. Such a ruling, therefore, would place a treating doctor who is considering rendering medical services to an injured worker in a position of facing a lengthy delay before he receives payment for his services, if the carrier elects to contest the propriety of the services rendered or of the charges submitted. Under these circumstances the doctor could not reasonably predict with any practical certainty whether the carrier would choose to contest the services themselves or the reasonableness of the charges submitted. Hence, a reasonable doctor would be reluctant to proffer medical services to an injured worker covered by the Workers' Compensation Act.

### The Duty and Obligation of Fair Dealing in Good Faith in the Processing and Payment of Claims

The Supreme Court has written that accompanying every contract is a duty to perform with care, skill, and reasonable expedience and faithfulness the thing agreed to be done. A negligent failure to observe any of these conditions is a tort as well as a breach of contract. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210 (Tex.1988). This same duty of care, reasonable expedience and faithfulness that applies to common law contract also applies equally to contracts of insurance. *Id.* at 212. *There is a recognized duty of an insurer to deal fairly and in good faith with its insured in the processing and in the payment of claims.* The duty of good faith and fair dealing exists because of a special trust relationship between the insured and the insurer. The special trust relationship exists because of the parties' unequal bargaining power and the nature of the insurance contracts which would permit unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlements or in the resolution of the claims arising from the insurance contract. *The disparity of the bargaining positions and the bargaining powers of the parties and the exclusive control that the insurer exercises over the processing of claims creates and imposes on the insurer the duty of good faith and fair dealing. Id.* 212.

The Workers' Compensation Act sets out a compensation scheme that is founded on a three-party agreement entered into by the employer, the employee, and the workers' compensation carrier. To construe the pertinent parts of the Workers' Compensation Act as urged by the carrier would seem to defeat the purposes of this remedial act. Such a construction as urged by the successful movant would often make the situation difficult for an injured worker to obtain necessary medical aid and services. The purpose of the Workers' Compensation Act is to provide for a speedy, equitable relief for the benefit of an employee injured in the course of his employment. *See Texas Employers' Insurance Association v. Wright*, 128 Tex. 242, 97 S.W.2d 171 (1936).

Therefore, the injured worker from the date of his personal, accidental injury necessarily relies upon the compensation carrier for weekly benefits and for the payment of medical expenses. Indeed, the worker is dependent upon the carrier for protection from the economic calamity of disabling injuries. *Aranda, supra.* As we perceive this record, Patricia Seale has raised an issue of material fact concerning economic calamity resulting from her injuries. If the carrier declines to pay a claim or to delay payment or to decline authorization, then the hurt worker has no immediate recourse. The disabled employee may, in the interim, suffer and sustain substantial damages because of an inability to meet basic living expenses or to pay in advance for necessary medical care or hospital care. Indeed, the existence and the functions of the Industrial Accident Board do not vitiate or destroy the special relationship of trust that exists between the carrier and the worker. We conclude that an affirmative duty exists on the part of the compensation carrier to deal fairly and in good faith with the injured employee in the processing of the claims.

On the trial on the merits of this case on remand the claimant, who argues that the carrier has breached the duty of good faith and fair dealing, has the burden of establishing the absence of a reasonable basis for denying or delaying payment of the benefits of the policy and that the carrier knew or should have known that there was not a reasonable basis for denying the claim or denying the payment of the claim or refusing the unequivocal request for authorization when made by the carrier's physician. However, here the burden shifts because of procedural posture and the carrier has the obligation to establish the reasonable basis for denying the claim, delaying payment and declining the authorization in relationship to the benefits of the policy. The carrier has the obligation to establish that the carrier did not know and could not have

known that there was a reasonable basis for denying the claim, delaying the payment and declining the authorization for treatment. We conclude the carrier failed to establish these criteria. Hence, the successful movant was not entitled to a summary judgment as a matter of law. TEX. R.CIV.P. 166a(c).

■ There is a duty on the part of the carrier to investigate claims. This duty to investigate will be met or satisfied by establishing that the carrier had a reasonable basis to deny the authorization. This burden was upon the carrier; the carrier did not discharge it. The carrier could have discharged this duty by establishing, based upon its duty to investigate and after the investigation, that there was no reasonable basis for the request for authorization or the request for bariatric treatment. Since the carrier did not investigate, the carrier failed to meet this burden.

■ We reject the contention that the exclusivity provisions of the Workers' Compensation Act provide the exclusive remedies for the injured worker and thereby preclude any cause of action against a carrier for bad faith or intentional misconduct in the processing of compensation claims, either for benefits or medical aid or hospital services. The compensation act spells out a compensation scheme and schedule for personal injuries sustained by an employee in the course of his employment. *Aranda, supra,* at 214. TEX.REV. CIV.STAT.ANN. art. 8306, sec. 3 (Vernon Supp.1990). It is clear then that the Act provides that the remedies set forth by the statute are exclusive only if the personal injury complained of is an injury contemplated by the Act; that is, a personal injury sustained in the course and scope of employment. Hence, the Act was not intended by the legislature to shield carriers from the entire field of tort law. Therefore, liability resulting from a carrier's breach of the duty of good faith and the duty of fair dealing from intentional misconduct in the processing of a compensation claim is different and separate from the liability for the actual accidental personal injury arising on the job. The injuries and damages

from the carrier's misconduct finds its genesis in the contractual relationship between the carrier and the employee and occurs and is sustained after the personal injury on the job. *Id.* at 214.

A recent case, *Service Lloyds Ins. Co. v. Greenhalgh,* 771 S.W.2d 688 (Tex.App.— Austin 1989) was affirmed in every part except one holding and was reformed on one point in *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938 (Tex.1990). The trial court in *Greenhalgh* submitted five theories of recovery: being breach of duty of good faith and fair dealing; unfair insurance practices; negligence; gross negligence; and, intentional infliction of emotional distress. In an expositive and excellently written and reasoned opinion by Justice Gammage, joined by Chief Justice Shannon and Justice Aboussie, the Austin Court of Appeals affirmed the trial court's judgment in the worker's favor. The jury found that all the acts of special issue one (which included apparently all of the five theories of recovery) were committed knowingly and maliciously and that all these acts constituted elements of all of the theories of recovery and that such acts were a proximate cause of actual mental anguish damages to Greenhalgh. The jury awarded Greenhalgh $8,000 in actual damages, $128,000 in punitive damages, as well as attorney's fees. On appeal, Service Lloyds contended, inter alia, that some of the acts in special issue number one did not give rise to recoverable damages because there was no duty of good faith and fair dealing between a workers' compensation carrier and a covered employee. Service Lloyds also urged on appeal that the judgment entered was erroneous because the suit arose out of the investigation, adjustment and negotiation and settlement of a workers' compensation claim, and that any duties owed to the parties are created and measured exclusively by the Workers' Compensation Act. Also, Service Lloyds argued that the Act does not include a duty of good faith to a claimant and therefore the trial court erred in rendering judgment based on the verdict and based on these duties. *Service Lloyds Ins. Co. v. Greenhalgh,* 771 S.W.2d at 691.

Service Lloyds affirmatively claimed and specifically averred that the failure to confirm medical benefits, the failure to timely pay for medical treatment, the failure to pay workers' compensation benefits and the hiring of an investigator cannot give rise to a common law cause of action and that the Industrial Accident Board is the administrative agency with the exclusive, or, in the alternative, the primary jurisdiction over complaints against a carrier. Therefore, no complaint by Greenhalgh had been leveled against Service Lloyds before the suit in the district court. Hence, the district court had no subject matter jurisdiction over the alleged bad faith claim.

The Austin Court of Appeals held that this cause of action lies and is founded in tort. This cause of action exists separate, apart and distinct from the Industrial Accident Board's administrative power to determine an employee's grievance for unreasonable failure to pay benefits for compensable injuries. *Id.* at 691. Of course, the *Greenhalgh* case was an appeal after a trial on the merits. Therefore, the procedural posture of that plain vanilla appeal was different from an appeal from the granting of a motion for summary judgment. Hence, the burden of showing that the carrier had breached the duty of good faith and fair dealing is reversed. The carrier has to prove conclusively that it exercised good faith and fair dealing. The carrier before us failed to discharge these burdens. We think, however, that the injured worker, Ms. Seale, raised these material issues of facts which were adverse to the position of American Motorist. In other words, we perceive that Ms. Seale assumed to discharge the burden of proof and burden of establishing, for summary judgment practice, certain genuine issues of material facts that she was not obligated to discharge.

■ If carriers conduct no investigation or if they breach their duty of good faith and fair dealing then they may become subject to liability for their tortious conduct, if proved. And of course, it cannot be gainsaid that a claimant may recover when the claimant demonstrates that the insurer's breach of the duty of good faith and the duty of fair dealing, or the carrier's intentional act or acts or the carrier's total failure to make a reasonable investigation is separate and apart and distinct from the compensation claim. Thus, those acts by a carrier produce an independent injury and an independent tort. *Aranda, supra,* at 214. This concept of liability is discernible especially when the need for medical aid in its various forms occurs after a final judgment.

■ The penalty provisions of the Act itself do not preclude the imposition of separate tort duties. TEX.REV.CIV.STAT. ANN. art. 8306, sec. 18a, and art. 8307, sec. 5a (Vernon Supp.1990); *Aranda, supra,* at 215.

■ Moreover, it was clear that the Supreme Court interpreted the exclusivity provisions of the Workers' Compensation Act to prevent only those actions founded directly on the initial personal injury sustained by the worker in the course and scope of his or her employment. *See Reed Tool Co. v. Copelin,* 610 S.W.2d 736 (Tex. 1980). *See also Izaguirre v. Texas Employers' Ins. Ass'n.,* 749 S.W.2d 550 (Tex. App.—Corpus Christi 1988, writ denied). *Aranda, supra,* and *Greenhalgh, supra,* are both to be applied retroactively.

The Austin Court of Appeals held, however, that the trial court erred in permitting Greenhalgh leave to file a post-verdict trial amendment increasing his punitive damage pleadings from $100,000 to $128,000. Obviously, Greenhalgh had specifically pleaded for only $100,000 as punitive damages. However, the jury awarded an additional $28,000. We point this out because this was the only point of error, in our opinion, that the Supreme Court addressed.

The Supreme Court of Texas in *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938 (Tex.1990) wrote that the issue was whether a trial court abused its discretion by allowing a post-verdict amendment increasing the amount of damages in the plaintiff's pleadings to conform to the amount awarded by the jury where the defendant presents no evidence of surprise

or prejudice. The Supreme Court held that under TEX.R.CIV.P. 63 and 66 a trial court must allow a trial amendment that increases the amount of damages sought in the pleading to that amount of damages that was actually found by the jury unless the opposing party presents evidence of prejudice or surprise. *Id.* at 939. The Court's opinion was written by Mr. Justice Mauzy. Justice Mauzy wrote:

> Not only did the trial court *not* abuse its discretion in granting the amendment, it would have been an abuse of discretion if the trial court had refused the amendment. Under Rules 63 and 66 a trial court has no discretion to refuse an amendment unless: 1) the opposing party presents evidence of surprise or prejudice, Tex.R.Civ.P. 63 and 66; *Hardin v. Hardin*, 597 S.W.2d 347, 350–51 (Tex. 1980) (Campbell, J., concurring); *see Food Source, Inc. v. Zurich Ins. Co.*, 751 S.W.2d 596, 599 (Tex.App.—Dallas 1988, writ denied); or 2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Hardin v. Hardin*, 597 S.W.2d 347 (Tex.1980). The burden of showing prejudice or surprise rests on the party resisting the amendment....

Hence, the additional $28,000 in punitive damages was restored to Greenhalgh.

Of paramount and crucial significance is the fact that there was no dissent. There was a concurrence written by Justice Hecht, joined by Chief Justice Phillips and Justice Cook. Indeed, the concurrence actually joined in the Supreme Court's judgment and in much of the Supreme Court's opinion as written by Justice Mauzy. The concurring opinion referred to Rule 63 which allowed amendments to pleadings "at such time as not to operate as a surprise to the opposite party." Rule 66, the concurrence concluded, "requires a court to allow amendments to pleadings during trial 'freely when ... the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits.' "

Indeed, the concurrence, we perceive, went further and enhanced the majority opinion. The concurrence stated:

> These provisions give a broad right to amend pleadings, even during trial, provided that an opposing party is not surprised or prejudiced. The rules do not terminate this right at the close of the evidence or the return of the verdict. To complicate matters further, Rule 301 states:
>
> > The judgment of the court shall conform to the pleadings, the nature of the case proved, and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled in law or equity.

Hence, the concurrence undergirded and buttressed its opinion by an additional rule, being Rule 301.

In *Greenhalgh*, reading the opinion of the Austin Court of Appeals, along with the Supreme Court opinion and concurrence, we conclude that these late cases control this appeal. We must reverse the judgment and remand the cause for a full trial on the merits. The Supreme Court opinion in *Greenhalgh* was handed down April 11, 1990, and the motion for rehearing was overruled May 23, 1990.

Under this record we conclude that the carrier failed to show that it was entitled to the summary judgment as a matter of law. Hence, we reverse and remand. We do not reach the other issues set out in *Greenhalgh, supra.*

**REVERSED AND REMANDED.**